TOWN OF SUFFIELD *vs.* LOUISE E. HATHAWAY.

The selectmen of a town have no right, as against an owner of land on the highway, to divert the water from a spring on such owner's side of the highway, to a public watering trough on the other side.

As a general rule courts will not interfere with selectmen in the exercise of their judgment as to the mode of making a highway safe for public travel, but will do so where' their object is merely to promote the comfort of travellers, and in so doing they invade private rights.

PETITION for an injunction to restrain the respondent from digging up water pipes laid under a highway by the selectmen of the petitioners and from filling up an excavation made by them by the side of the highway; brought to the Superior Court in Hartford County. The court found the following facts:

For a long period prior to the commencement of the present suit there was a public highway in the town of Suffield running in a westerly direction from High street in the village of Suffield to West Suffield. Prior to October, 1874, the respondent was, and ever since has been, the owner of certain land on the southerly side of and adjoining this highway, and of the soil from the southerly line of the highway to the center of the same, subject only to the easement of the public therein as a public highway. Upon that part of the land covered by the highway, there is a small spring of water which, prior to the year 1851, rose to the surface of the highway and rendered it at that place wet, soft and inconvenient for public use. Some time in that year one of the highway-surveyors of the town, who had charge of this highway, constructed a stone drain beneath the surface of the highway, which carried off the water from the spring into the ditches on the sides of the traveled path and made the highway dry and convenient for public use. This drain was continued until some time in the year 1873 or 1874, when, from the unauthorized acts of individuals and the want of proper care on the part of the town, the drain became obstructed, and by reason thereof the water of the spring rose, at times, to the

surface of the highway, as it had risen before the drain was constructed. On the third of October, 1874, the first select-man of the town and another of the selectmen, partly for the purpose of draining the highway, but mainly for the purpose of creating a reservoir to collect the water from the spring and conveying the same from the reservoir to a watering-trough on the opposite side of the highway for public use, dug a hole from two to three feet in depth and from eighteen to twenty-four inches in diameter, in the land of the defendant covered by the highway, and walled up the same with stones and cement, and then laid a pipe beneath the surface of the highway and across the same, to the watering-trough, and by means thereof conveyed the whole of the water of the spring to the trough. The respondent by her agents the next day removed the stone and cement-work of the reservoir and filled up the excavation made for the same, but left the highway in good condition for public use.

The highway cannot be kept in good and sufficient repair unless it is drained; but the drain which was laid by the high-way-surveyor in 1851, if unobstructed, and in a proper state of repair, would be sufficient to effect such drainage. The works removed by the respondent were useful only for the purpose of collecting the water of the spring, and supplying the watering-trough with water.

The respondent offered witnesses who claimed to be acquainted with the business of making and repairing roads, and who were experts in that business, and conversant with the highway in question, to testify that in their opinion the well was not necessary for the purpose of draining the high-way, and was of no benefit to the highway. To the admission of this testimony the petitioners objected, on the ground that the selectmen were the sole judges of what was necessary for the proper drainage of the highway, and that their judgment could not be reviewed by this court. But the court overruled the objection and admitted the testimony.

Upon these facts the court (*Hovey, J.,*) dismissed the petition. The petitioners thereupon brought the record before this court by a motion in error.

*C. E. Perkins,* for the plaintiffs in error.

1. It will be agreed that the highways of a town are under the special care of the selectmen. They are the only persons who are to decide what is necessary or desirable to keep them in proper repair and in suitable condition for public use. This being so, can any person destroy drains or other things deemed necessary by the selectmen for keeping the road in repair? And if any one does so, is the court upon the trial to decide the case upon its own views of what would be a proper mode of keeping the road in repair? Can an adjoining proprietor change the grade of a road, the depth of a gutter, a railing, or a bar across the road to turn water, and justify on the ground that it was not necessary? In *Benjamin* v. *Wheeler,* 8 Gray, 409, an action was brought against a person for digging a ditch in the highway, and he justified by showing that he did it under the direction of the proper officers of the town. The plaintiff offered evidence to prove that the ditch was unnecessary, but the court held the evidence inadmissible, and say: "The question of the necessity of the repairs must be determined by the proper officers of the town, and their judgment and action upon the subject cannot be revised by the jury in an action at law. If the construction of the water-course was with the approbation of the selectmen legally given, it cannot be left to the jury to say whether the making of such water-course was necessary for the highway." This decision was affirmed in *Benjamin v̇. Wheeler,* 15 Gray, 486, and in *Turner* v. *Dartmouth,* 13 Allen, 291. See also *Mills* v. *City of Brooklyn,* 32 N. York, 489, 495; *Yealy* v. *Fink,* 43 Penn. S. R., 212; *Hovey* v. *Mayo,* 43 Maine, 322; *Plum* v. *Morris Canal & Banking Co.,* 10 N. Jersey Eq. R., 256. There is a class of cases where necessary public work is done in such a negligent and careless manner as to do injury to others, and in such cases courts can give damages; but no such question arises here. If this question of propriety and necessity is to be decided by courts, why would not the selectmen be liable in an action of trespass for any act done on highways whenever a jury might think the acts done were not necessary? It is not pretended that this method

was adopted with any intent to injure any one, or that in fact it did injure any one. The water collected by the drain would be discharged into a gutter somewhere and run off. Instead of having it run into the ditch at the side of the road, it was thought best to lay a pipe and discharge it at a distance. There was certainly nothing illegal or improper in this, and the selectmen were better judges of whether this was the best way of managing the drainage than a court could be. The mere fact that at the end of the drain the pipe terminated in a public watering-trough would not affect the right of the town to have the end of the drain at that spot instead of another.

2.   But even if this evidence was admissible, upon the facts found the court should not have dismissed the bill. It is found that the highway at this place was full of springs, and a drain was necessary to collect and carry off the water. We submit that when water upon a highway is so properly collected and carried off, the town has a right to utilize the water so collected to fill a public watering-trough. It is well settled that supplying water is a public use; lands may be taken for it, and towns and cities may use their highways for locating water-pipes. It will hardly be claimed also that towns have not the power to provide public fountains, pumps and watering-troughs for the use of their citizens and the public generally. *Baxter* v. *Commonwealth*, 3 Penn., 253 ; *Tompkins* v. *Hodgson*, 4 Thomp. & Cook, 435, 437. There is not a town in the state where public watering-troughs along the roads will not be found, and the legislature has approved it, by authorizing towns to make an annual payment to any public-spirited individual who provides one at his own expense. Gen. Statutes, p. 235, sec. 26. If the town can establish a public watering-trough, why can they not fill it by using the water coming from a drain in the highway, and which would be otherwise wasted? We submit, therefore, that this use of the water was proper, and that an interference with it by the respondent by destroying it should be restrained by injunction.

*A. P. Hyde*, for the defendant in error.

1.   The public acquire no right in the land of a proprietor, over which a public highway is laid, except that "of passing over the land, and, as an incident of such right, that of using the soil, and the materials upon it, in a reasonable manner for the purpose of making and repairing it." *Woodruff* v. *Neal*, 28 Conn., 167.   "The former proprietor still retains his exclusive right in all mines, quarries, *springs of water*, timber, and earth, for every purpose not incompatible with the public right of way." *Jackson* v. *Hathaway*, 15 Johns., 447, 453.   See also Angell on Highways, §§ 301 to 304; Washb. on Easements, 228.

2.   The fact that the watering-trough to which this water was diverted was *for public use*, can make no difference.   It is no more a part of the duty of the town, in maintaining a highway, to construct within its limits places for watering teams passing thereon, than it is for them to construct within such limits, at suitable intervals, inns or other structures for the accommodation and refreshment of travellers on such highways.

3.   The evidence offered by the respondent, and objected to by the petitioners, was properly admitted.   In the petitioners' bill it is alleged as a ground for asking the interference of the court, and, as we submit, the only ground, "that the continuance of said works for drainage is necessary for the proper management of said highway."   The evidence offered by the respondent was for the express purpose of disproving this allegation.   If the allegation in the bill was proper, and necessary to be proved, it is clear that the respondent had a right to disprove it.   But the plaintiffs insist that the selectmen of Suffield were the sole judges whether or not these works were necessary for the purposes of drainage.   Even if this were so, would it not be proper for the court to enquire whether the works were constructed by the selectmen in good faith for the purposes of drainage, or for some other and improper purpose?   If so, the fact that the works were not necessary for the purpose of drainage would clearly be an important fact, to enable the court to come to a proper result.

4.   Selectmen and highway-surveyors are liable to have

their conduct questioned by the court whenever they exceed their authority, or act improperly to the injury of others, although they may be doing what they judge necessary in keeping a highway in repair. *Munson* v. *Mallory*, 36 Conn., 173; *Radcliff's Exrs.* v. *Mayor*, &c., *of Brooklyn*, 4 Comst., 195, 199; *Anderson* v. *Van Tassel*, 53 N. York, 631.

PARDEE, J. In *Woodruff* v. *Neal*, 28 Conn., 167, STORRS, C. J., said as follows: "It is well established in this state, in conformity with the principles of the common law, that a highway is simply an easement or servitude, conferring upon the public only the right of passing over the land on which it is laid out, and as an incident of such right that of using the soil and the materials upon it in a reasonable manner for the purpose of making and repairing it. The title of the owner of the land is not extinguished, but is simply so qualified that it can only be enjoyed subject to the easement. He retains the fee and all rights of property in the land not incompatible with the public enjoyment of the right of way, and whenever the highway is abandoned or lost, the entire, exclusive and unincumbered enjoyment reverts to him. Subject to this right of the public he may take trees growing upon the land, occupy mines, sink water-courses under it, and generally has a right to every use and profit which can be derived from it consistent with the easement, and when disseized (as he may be) can maintain ejectment, and recover possession subject to the easement, and can also maintain trespass for any act done to the land not necessary for the enjoyment of the easement, which would be an actionable injury if the land was not covered by a highway." In *Jackson* v. *Hathaway*, 15 Johnson's Reports, 447, the Supreme Court of New York said as follows: "When the sovereign imposes a public right of way upon the land of an individual, the title of the former owner is not extinguished, but is so qualified that it can only be enjoyed subject to that easement. The former proprietor still retains his exclusive right in all mines, quarries, springs of water, timber and earth, for every purpose not incompatible with the public right of way."

Upon the other hand, inasmuch as the law places upon towns the duty of constructing and repairing all necessary highways within their respective limits, it is the corresponding right of the officers representing towns in this behalf to dispose of water flowing from springs upon a public way, by such methods as will in their judgment most economically and completely establish its safety.   So long as they confine themselves to this single, overruling purpose, courts will not, as a rule, attempt to control or even interfere with them in the exercise of their discretion as to the manner in which they will effect this result; but this supremacy does not extend beyond this one point.   In the case before us, as between the public and the respondent, the owner of the spring, the latter is entitled to any and all uses of it which do not interfere with the public safety, do not obstruct or hinder public travel, and do not increase the public burden of making repairs.   If therefore the officers can at the same cost make and keep the way equally safe and convenient, and still allow the water to flow from the spring over and upon the land of the owner of it, it is their duty so to do.   The right of the owner to the use of the spring under these limitations takes precedence of the right of the officers to divert it to the lands of others, if in so doing their sole motive is to establish a public watering place.   Of course, such places afford great relief to man and beast; but, commendable as is the act of establishing them, towns have no right to take private property without compensation for that purpose.

In passing upon the question of evidence made in the court below, we must distinguish an enquiry as to *purposes* from one as to *methods*.   We think the court had a right to enquire as to the *purpose* for which the selectmen diverted the flowing water from the owner.   If that purpose should prove to be simply drainage for public safety, the court would ordinarily refrain from enquiring as to the methods by which it had been effected; but, if the purpose should prove to be solely to supply a watering trough, then the court, leaving aside the entire question as to *methods*, might enquire whether in so doing they had destroyed any private right.   It is not true that

every act done by officers within the limits of the way is beyond the reach of judicial investigation; if it is done in the line of governmental duty, solely to secure the proper degree of safety to the traveler, they are entitled to immunity; if beyond this line, they are not necessarily. The court having found that the works removed by the respondent were useful only for the purpose of collecting the water from the spring and diverting it from her for the supply of a public watering-trough, this ceases to be a question as to when, if ever, a court will interfere with selectmen in the exercise of their discretion in repairing ways. They had ceased to act for that purpose; had ceased to provide for public safety; had become ministers to the public comfort. In this last capacity, as against this respondent, they had no power to act at all; therefore we think there is no place for a discussion as to their mode of action.

There is no error in the judgment complained of.

In this opinion the other judges concurred.