WILLIAM C. SHERWOOD and others *vs.* CITY OF DULUTH.

January 11, 1889.

Assessments for Local Improvements—Review by Certiorari—*Certiorari* will lie to review the action of the district court in confirming a special assessment by the board of public works of the city of Duluth to defray the expense of a local improvement.

Same—Assessment for Sewers—Diversion of Natural Stream.—Its charter authorizes the city of Duluth to construct sewers, and to levy assessments therefor upon the property to be benefited by such improvement. *Held,* that while this would not authorize the levy of an assessment to defray the expense of diverting a stream from its natural course into a sewer, undertaken as an independent enterprise, and not as a part of a system of public drainage, yet if, in the judgment of the municipal

authorities, the proper drainage of the city, for the preservation of health and the protection of property, required that a small stream running through the city should be diverted from its natural course, and carried off in a sewer, and if, confining themselves to this one controlling purpose of public drainage, they should construct a public sewer of sufficient capacity to carry off both surface water and the waters of the stream, this would be within the legitimate exercise of the authority to construct sewers; and if the property relieved by the sewer of the waters of the stream thereby receive greater benefits than adjacent property, which was relieved only of ordinary surface water, the assessment against it may be correspondingly greater.

*Certiorari*, directed to the district court for St. Louis county, to review an order by *Stearns, J.*, confirming an assessment made by the city of Duluth.

*Allen & Parkhurst*, for relators.

*S. L. Smith*, for respondent.

MITCHELL, J. *Certiorari*, to review the action of the district court in confirming a special assessment of the board of public works of the city of Duluth, to defray the expense of a local improvement, pursuant to section 10, chapter 5, of the city charter, (Sp. Laws 1887, *c.* 2.) Notwithstanding that the charter provides that when the district judge makes an order confirming such an assessment, the assessment-roll, and all things contained therein, shall be *res adjudicata*, and no appeal shall be allowed from the assessment, yet the proceedings may be reviewed on *certiorari*. To deprive parties of this right, if it can be done at all, the intention to do so must be expressed with unequivocal clearness. Dill. Mun. Corp. §§ 440, 926; *Tierney* v. *Dodge*, 9 Minn. 153, (166;) *City of St. Paul* v. *Marvin*, 16 Minn. 91, (102.)

The district judge, in obedience to the writ, makes return that the following constitute all the proceedings taken or had before him in the matter: (1) The board of public works submitted the assessment, [Exhibit A,] which they asked to have confirmed. Indorsed upon the assessment-roll is the approval of the assessment by the board, and stating that it was made to defray in part the expense of grading and paving Superior street, and the construction of certain storm sewers, among which was one on First avenue west, from St.

Paul & Duluth Railroad to Cascade square; "also for changing the course of Clark House creek into First avenue west storm sewer in Cascade square." Accompanying this assessment-roll were the notices of assessment, and of application to the court for its confirmation, given, respectively, in accordance with sections 9 and 10 of chapter 5 of the city charter, and both describing the improvements for which the assessment was made the same as in the indorsement upon the assessment-roll. Upon the hearing, the relators presented written objections (Exhibits B, C, and D) to so much of the assessment against their property as was assessed as benefits by reason of changing the course of Clark House creek into said sewer. The only ground of objection that is here material is that the board of public works had no authority to make any assessment for any such purpose as changing the course of a stream. The relators requested the court to require the board to state on what theory or principle their lots were. assessed for benefits for said improvement (the building of the sewer) over and above the amounts assessed on adjacent lots. In response to this the board answered that said amounts were assessed against these lots as benefits accruing to them "by virtue of the turning of said Clark House creek from said lots." Thereupon, no other evidence having been introduced, the court overruled the objection, and confirmed the assessment.

From this very meagre showing, it is quite difficult to understand the situation or ascertain the facts. Probably both court and counsel, being familiar with the situation, took notice of and assumed facts not disclosed by the record. If the board of public works undertook the work of diverting a natural stream as an independent enterprise, and not for the purpose of draining the city and as a part of a sewerage system, they certainly had no authority under the charter for making assessments for any such improvements. But, on the other hand, if the proper drainage of the city for purposes of public health, the protection and improvement of streets, or the like, required that a stream running through the city should be diverted from its natural course, taken into and carried off by a sewer, then we have no doubt that the city had, under its authority to construct sewers and drains, ample power to do so, and to levy assessments therefor

upon the property benefited. The power of municipalities to construct sewers for public drainage purposes, so as to protect health and property, is a very ancient and ample one; and it is a matter of common knowledge that a small stream, running in its natural course irregularly through a populous city, is often as great an injury to property as mere surface water, rendering it wet and marshy, and hence unfit for use for urban purposes. It would also often interfere with the proper improvement of streets into or across which it runs. Moreover, its waters would ordinarily become polluted, and a menace to public health and comfort. Hence it would often be as necessary to gather its waters into a sewer as it would to do so with mere surface water and what is usually termed "sewage." If the municipal authorities confine themselves to the one controlling purpose of public drainage, their judgment as to the propriety or necessity of doing this, as well as to the method of doing it, will ordinarily be conclusive. *Town of Suffield* v. *Hathaway,* 44 Conn. 521. And if, for that purpose, a sewer be constructed for the combined object of carrying off both the waters of a stream and surface water, if the property relieved of the former as well as the latter thereby receives greater benefits than that which is relieved of surface water only, there is no reason why the assessment against it should not be correspondingly greater. The difficulty in the present case is to determine from the meagre record just what the purpose of the board of public works was in diverting this stream,—whether as a part of a system of public sewerage, or as a separate and independent enterprise.

Supplementing the record by the statements made by the relators themselves in their petition for the writ, and in their brief, we gather the following outline of the situation: First avenue west, in which the sewer was constructed, runs at right angles with Superior street from some point on the hill, near Cascade square, down towards the lake. Into the sewer built in this avenue a considerable territory, including relators' lots, would be drained. On the hill, near Cascade square, rises a small streamlet known as "Clark House creek," which in its natural course ran irregularly towards the lake in the same general course as First avenue west, crossing the lots of relators.

Before reaching relators' property it ran into first avenue west, and then turned back onto private property, and ran towards the lake, crossing in its way the intervening streets. The board constructed the sewer in this avenue of sufficient capacity to carry off both surface water and this stream, and then, intercepting the stream up near Cascade square, turned its waters into the sewer, by which they are conducted down to or towards the lake. The whole assessment against relators' property is to defray the cost of constructing this sewer, but the basis or principle upon which the board proceeded in assessing benefits accruing to property from the improvement was to assess a uniform sum of $53.18 on each lot of 50 feet frontage, (and smaller ones in proportion,) whose surface water would be drained into the sewer, and in addition to this an extra amount on each lot through which the natural course of the stream ran, on the ground that they were benefited that much extra by the sewer, by reason of being relieved of the water of the stream. In other words, the whole amount charged against relators' property was all one assessment, and all for benefits derived from the construction of the sewer, but made up in part of benefits similar to those received by adjacent lots draining into the sewer, and in part of benefits peculiar to this property by reason of being relieved of the stream. It is to this last part that relators interposed the objection. The burden was on them to establish their objection to the assessment. While the records presented to the court in connection with the admission made by the board on the hearing are somewhat ambiguous, yet we think the fair inference from them, when construed in the light of the admissions of the relators themselves, is that the turning of the stream into the sewer was not a separate and independent enterprise, but a part of and incidental to the main purpose of the proper drainage of that part of the city. At least, the contrary certainly does not appear. Whether the diversion of such a stream for such a purpose, in case it results in damage to any one through whose property it originally ran, would be a taking of private property so as to entitle him to compensation, is a question which does not arise in this case.

Order affirmed.