### RACHEL MURRAY *vs.* COUNTY OF NORFOLK.

Norfolk. March 18, 1889. — May 17, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Relocation of Way — Notice — Assessment of Damages — Statute.*

Upon a petition to the Superior Court for a jury to assess damages caused by the relocation of a way, it is not open to the petitioner to object that proper notice was not given him of such relocation, an action of tort or certiorari being the remedy, if any, for a defective notice.

The owner of a strip of land taken for the relocation of a way was permitted, by the county commissioners' order, to remove property upon it within a limited time, after which the town ordered to do the work cut down a hedge upon it as well as trees in front of it within the original limits of the way, and, without any notice to him or other proceedings had, removed a fence and wall forming a single structure remaining upon the strip. *Held,* upon such a petition, that the owner could not recover the value of the hedge or trees, but was entitled to that of the fence and wall.

PETITION to the Superior Court, under the Pub. Sts. c. 49, §§ 13, 105, for a jury to assess damages caused by the relocation and widening of River Street in Hyde Park.

At the trial in the Superior Court, before *Aldrich,* J., the jury returned a verdict assessing the petitioner's damages, and both the petitioner, who was dissatisfied therewith, and the respondent, alleged exceptions, the substance of which appears in the opinion.

*W. H. Towne,* for the petitioner.

*T. E. Grover,* for the respondent.

DEVENS, J. The case at bar is before us on exceptions to the rulings of the presiding judge by both the petitioner and the respondent in a proceeding to assess the damages sustained by the petitioner by the relocation and widening of River Street,

a highway in the town of Hyde Park. The county commissioners made a decree for this relocation, which took from the petitioner a strip of land about eleven feet in width, extending along the front of her estate on that street. This decree was recorded on July 26, 1887, and ordered the town of Hyde Park to construct the street as located anew within one year from that date, according to a plan which was made part of the decree, to the satisfaction of the commissioners, and provided that the damages occasioned by the relocation and construction should be paid by the county.

The decree and order were filed with the town clerk, and the petitioner had no actual notice thereof; but we do not understand that this has been insisted upon by the petitioner in argument. Nor can we perceive that such an objection could properly be availed of here. Not only has the petitioner had all the notice which the statute requires, (Pub. Sts. c. 49, § 9,) but by bringing her petition to the Superior Court for the assessment of her damages she necessarily assumes that the proceedings were legal and regular, and that she is entitled to avail herself of this statutory process, which is a substitute for the petition for a sheriff's jury. Pub. Sts. c. 49, § 105. If she sought to avail herself of a defective notice, her remedy would be by an action of tort, or by a petition for a certiorari to quash the proceedings. *Foley* v. *Haverhill,* 144 Mass. 352.

By the decree the owners of the land taken were given three months within which to remove property consisting of "timber, wood, and trees, and to remove their buildings, structures, hedges, walls, and fences," on the land taken for the widening. Upon the strip taken from the petitioner there was a hedge which was not removed by her, but was cut down by the town in the work of widening, which was not commenced until nearly a year after the decree. There were also in front of the petitioner's premises, but within the limits of the highway as it existed before the widening, seven trees, which were cut down by order of the selectmen of Hyde Park in reconstructing the street. For this hedge and the trees the petitioner claimed she was entitled to recover damages, but the court ruled otherwise, and held that, if not removed, they must be taken to be forfeited to the town, to which ruling the petitioner excepted.

We must assume that the instructions of the court were correct, except in the particulars to which the petitioner excepted, and that, as the assessment of damages related back to the time of taking, the jury were allowed to consider the value of the land taken, the injury, if any, to her remaining land, whether occasioned by the removal of the hedge and trees or otherwise, the cost of fencing, and generally damage done to the petitioner, whether by taking her property or in any other manner, and that she was merely prevented from recovering the specific value of the hedge and trees. In connection with such instructions, the jury would necessarily understand that the petitioner would be entitled to the full value of the land taken, with all that was upon it, with all injury to the remaining land, deducting therefrom the value of the hedge and trees for the purpose of removal, the claim for which the ruling treats as abandoned by the owner's neglect to remove the same within the time allowed. It remains to be considered whether the court could rightfully hold that such a deduction could be made.

This depends primarily upon the interpretation of the Pub. Sts. c. 49, § 9. The last clauses of this section are as follows: " They [the commissioners] shall also allow the owner of the land a reasonable time, which shall be expressed in their return, to take off his timber, wood, or trees. If he fails to remove the same within the time allowed, he shall be deemed to have relinquished his right thereto for the benefit of the town." The Pub. Sts. c. 49, § 51, which authorize a jury assessing damages to extend the time for such removal, provide: " If he [the owner of the land] neglects to take off the same within the extended time, he shall be deemed to have relinquished his claim thereto for the benefit of the town, as before provided." It is the contention of the respondent, that the statute intends that in case of failure to remove trees there shall be no compensation therefor. All that is taken for the highway is an easement in the land, and the trees, etc. which are upon the land are not intended to be taken, and ample opportunity is given to remove them. When it is provided that, if not removed, it shall be deemed that the " right thereto " — or the " claim thereto," as § 51 has it — is relinquished for the benefit of the town, it must mean that such right or claim is abandoned. It is not easy to

see how the relinquishment could be of benefit to the town constructing the road, if the value of the trees which the owner thus relinquishes is to be paid for. Nor do we perceive that there is any constitutional objection to this construction. We readily concede the petitioner's proposition that the duty of paying an adequate compensation for private property taken is inseparable from the exercise of the right of eminent domain. But when that which is upon the land in the shape of trees, etc. is not sought to be taken by the location, when time is given for its removal, and when if not removed no deduction is made from the owner's damages except of its value for the purpose of removal, we do not perceive that any injustice is done him, or that he may not properly be deemed to have abandoned any claim for compensation for such property if he thus relinquishes it. *Commonwealth* v. *Noxon*, 121 Mass. 42. *Colburn* v. *Kittridge*, 131 Mass. 470, 472.

There is a separate ground, so far as the trees, as distinguished from the hedge, are concerned, upon which the court also ruled that the petitioner could not recover their value. These trees were within the limits of the old way. They were not cut down by any order of the commissioners. The removal of obstructions in the street or highway is a duty which is left with the town. If these trees became an obstruction in the street by reason of its widening, in the opinion of the proper officers of the town, it was for them so to determine, and to order their removal, and their decision is conclusive. *Morrison* v. *Howe*, 120 Mass. 565. Whether the officers of Hyde Park took the necessary steps to give themselves authority to cut down these trees, if any such were required, or whether they were cut down without such authority, the act done was theirs, and not that of the county, and in neither event is it responsible. Pub. Sts. c. 52, §§ 3–10. St. 1885, c. 123, § 2. The trees were not within the limits of the new location, and not upon the land at that time as a part of the petitioner's property. They were cut down by the order of the selectmen, and not by that of the county commissioners. We are of opinion, for the reasons above stated, that the petitioner was not entitled to recover either the value of the hedge or that of the trees.

The respondent excepted to the ruling of the court by which

the petitioner was entitled to recover for the value of a fence and wall, constituting but a single structure, which stood upon the strip taken from the petitioner under the order of the commissioners, the wall being used by the town in the construction of the sidewalk of the way as relocated.   Section 17 of chapter 49 of the Public Statutes, under the provisions of which this ruling was made, provides that, " If the owner of any building or materials, on land a part or the whole of which is taken, refuses or neglects to take care of or to remove such buildings or materials, after reasonable notice in writing from the commissioners, they may take such care of the same as the preservation thereof or public safety demands ; or may remove the same upon the adjoining land of such owner, or elsewhere ; or may sell the same at public auction, after five days' notice of such sale, and hold the proceeds for the benefit of such owner; and the expense so incurred, or the value thereof to the owner, shall be allowed in reduction of his damages."

The order of the county commissioners allowing landowners three months within which to remove their trees, etc., had included also any buildings, structures, walls, fences, etc., on the land taken ; but no notice in writing was given to the petitioner to remove the wall and fence, nor were any proceedings taken for the removal thereof, or for the sale of the materials, such as this section contemplates.   It was therefore held by the presiding judge, that, as neither the town nor the commissioners resorted to the statutory powers with which they were invested, the petitioner might recover compensation therefor, the jury being cautioned not to include the value of the fence and wall in their estimate of the value of the land taken, and then assess the value of the fence and wall separately, and thus give the petitioner the value of the same twice.   If this ruling is correct, a quite different rule is applicable to the " timber, wood, or trees," which are the only things expressly named in § 9, and to the buildings or materials which are upon the land, and it would not be necessary that the return of the commissioners transmitted to the town should specify any time for the removal of buildings or materials, as these must necessarily be disposed of under the provisions of § 17.

The respondent contends that § 17 furnishes only a cumulative

remedy to that provided by § 9; that under § 9 it is necessary that the commissioners should give a reasonable time for the removal of the wall and fence; that the property would be forfeited if not removed within such time; and that § 17 only provides that additional proceedings may be had in the disposition of such property. If, in addition to "timber, wood, or trees," § 9 had included "buildings or materials," such a construction might be possible, although even then the existence in § 17 of the careful provisions for preserving the buildings and materials, or the value thereof, to the owner, would afford strong ground for maintaining that these were intended to be excepted from the provisions by which such property is deemed to be relinquished for the benefit of the town. But the result which is reached under § 9, where the property is deemed to be relinquished for the benefit of the town, and under § 17, where the value of the property is carefully preserved to the landowner, are so inconsistent that they cannot coexist if applicable to the same property. It must be held, therefore, that the property specified under § 17 is not included in § 9, it not being there included in terms, and that it has been determined to prescribe one rule for the timber, wood, or trees, and perhaps for crops grown upon the land, and another and different one for the artificial structures erected upon it, and their materials.

The respondent relies much on a statement made *obiter* in *Commonwealth* v. *Noxon, ubi supra,* where it is said, "There can be no doubt that the statute above quoted, (Gen. Sts. c. 43, § 13, Pub. Sts. c. 49, § 9,) although it names only 'timber, wood, or trees,' must apply also to buildings and parts of buildings, materials of walls and fences, growing crops, and generally everything valuable to the owner, but inconvenient or unsuitable to be left within the limits of the way." The Pub. Sts. c. 49, § 17, are substantially the same as the St. of 1871, c. 382, § 4, and constitute a re-enactment of that section. The St. of 1871, c. 382, is what is known as a betterment act, which did not take effect, with the exception of § 4, unless the act was accepted by the town, or unless a previous act, that of the St. of 1869, c. 169, had already been accepted. The exception of § 4 from the provision requiring acceptance of the act of 1871 gave it force throughout the Commonwealth. The Pub. Sts. c. 51,

are a re-enactment of the St. of 1871, c. 382, with the exception of § 4, which is there omitted, and properly transferred to the Pub. Sts. c. 49, the highway act.

While the Pub. Sts. c. 49, § 17, were therefore, as § 4 of the St. of 1871, c. 382, actually then operative, it evidently did not attract the attention of the learned judge who gave the opinion in *Commonwealth* v. *Noxon*, nor did he observe that any other provision than that now found in the Pub. Sts. c. 49, § 9, had been made for damages done to buildings and materials when a highway was laid out over land on which they were. Nor is it surprising that this should be so; he was dealing with an order passed in 1852, long before the St. of 1871, c. 382, § 4, was passed, and with the inquiry whether a person who had simply permitted a building allowed by commissioners to remain on land taken for a highway " during its natural life," who had received no notice to remove it, and when no entry for the purpose of possession had been made on the land, could be indict able for maintaining a nuisance.

The statement made in *Commonwealth* v. *Noxon* is also cited incidentally with approval in *Colburn* v. *Kittridge*, 131 Mass. 470, 472, in considering whether commissioners in laying out a highway had authority to allow a building to remain within its limits. In this case also, the court was dealing with an order passed long before the passage of the St. of 1871, c. 382, § 4, the effect of which it was not necessary then to consider. But if it was possible to give the words " timber, wood, or trees " so wide a signification as to include buildings, fences, and other artificial structures, or the materials thereof, when no other provision had been made for the removal of that which was upon the land when it was taken for the public use of a highway, yet since a provision has been made for the disposition of such structures, the preservation or the sale thereof, and the payment therefor, such provision must be the one which in regard to them is controlling.

We are therefore of opinion, that the court rightly ruled that for the wall and fence the petitioner was entitled to recover. The result is, that as to the exceptions of both the petitioner and the respondent, the entry must be

*Exceptions overruled.*