# WEBBER v. SALT LAKE CITY.

No. 2251.   Decided December 28, 1911 (120 Pac. 503).

1. EMINENT DOMAIN—CHANGE OF GRADE OF STREETS—LIABILITY TO
   ABUTTING OWNERS.  A city lawfully and properly changing an
   established grade of a street is liable for damages to abutting
   owners.[1]   (Page 223.)

2. LIMITATION OF ACTIONS—LIMITATION APPLICABLE—CHANGE OF
   GRADE OF STREETS—"STATUTORY LIABILITY."  The right of an
   abutting owner to recover for damages caused by a change of
   street grade is given by Const., art. 1, sec. 22, providing that
   private property shall not be damaged for public use without
   compensation, and not by Comp. Laws 1907, sec. 282, authoriz-
   ing the recovery of damages to abutting property by change of
   an established grade of a street, so that a cause of action for
   such damages is not based on a statutory liability within sec-
   tion 2877, subd. 1, limiting the time for bringing actions for
   statutory liability.[2]   (Page 223.)

3. LIMITATION OF ACTIONS—LIMITATION APPLICABLE—CHANGE OF
   GRADE OF STREET—DAMAGES—ACTIONS.  An action for damages
   to abutting property, caused by the change by a city of an
   established grade of a street, is within Comp. Laws 1907, sec.
   2883, limiting actions not otherwise provided for to four years
   from the time of the accrual of the cause of action.[3]   (Page
   225.)

4. EMINENT DOMAIN—CHANGE OF GRADE OF STREET—DAMAGES—
   ACTIONS—LIMITATIONS.  An action by an abutting owner for in-
   juries to his property, caused by a change in the established
   grade of a street, is not barred by Comp. Laws 1907, sec. 312,
   providing for the filing of claims against a city within thirty
   days after the injury arose, where the abutting owner filed a
   claim within thirty days after the completion of the street
   improvement.   (Page 225.)

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—HARMLESS ERROR.
   Errors in the admission and exclusion of evidence will not be
   considered on appeal, where they are harmless.   (Page 225.)

---

[1] Kimball v. Salt Lake City, 32 Utah, 253, 90 Pac. 395, 10 L. R.
A. (N. S.) 483, 125 Am. St. Rep. 859; Hempstead v. Salt Lake City,
32 Utah, 261, 90 Pac. 397; Felt v. Salt Lake City, 32 Utah, 275, 90
Pac. 402.

[2] Kimball v. Salt Lake City, 32 Utah, 253, 90 Pac. 395, 10 L. R.
A. (N. S.) 483, 125 Am. St. Rep. 859.

[3] O'Neill v. S. P., L. A. & S. L. R. Co., 38 Utah, 475, 114 Pac. 127.

6. EMMINENT DOMAIN — CHANGE OF GRADE OF STREETS — DAM-
AGES. A city proceeding lawfully and properly in changing an
established grade of a street owned by it in fee is not liable
in damages for the removal of shade and ornamental trees
planted by the abutting owner and growing in the street; the
removal being unavoidable in changing the street.[4] (Page
226.)

APPEAL from District Court; Third District; *Hon. M. L.
Ritchie,* Judge.

Action by Mary E. R. Webber against Salt Lake City.

Judgment for plaintiff.    Defendant appeals.

MODIFIED AND AFFIRMED.

*H. J. Dininny* and *P. J. Daly* for appellant.

*Howat & Macmillan* for respondent.

FRICK, C. J.

Respondent brought this action for the recovery of con-
sequential damages, alleged to have been sustained to her
premises abutting upon a public street in Salt Lake City. She
alleges that the damages were caused by appellant in making
a change in the grade of the street in front of her property.
A trial to the court, without a jury, resulted in findings and
judgment in favor of respondent, from which appellant prose-
cutes this appeal.

It is conceded on all sides that the appellant had the legal
authority to make the improvement in the street; that it was
properly made; and that the liability in this case arose, either
by virtue of the provisions of our Constitution, or by virtue of
a certain statute to which we shall refer hereafter.

This case, so far as the question of a change of an estab-
lished grade is concerned, falls squarely within the decisions

---

[4] Morris v. Salt Lake City, 35 Utah, 474, 101 Pac. 373.

of this court in *Kimball v. Salt Lake City,* 32 Utah, 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483, 125 Am. St. Rep. 859; *Hempstead v. Salt Lake City,* 32 Utah, 261, 90 Pac. 397; and *Felt v. Salt Lake City,* 32 Utah, 275, 90 Pac. 402. In view of the rule laid down in the cases just referred to, the change of grade in this case was clearly a change of an established grade, and, as the evidence is sufficient to sustain such a finding, no further discussion of that question is necessary.

One of the principal errors assigned is that the court erred in overruling appellant's demurrer to the complaint. The demurrer is based upon the ground that the alleged cause of action is barred by the "provisions of sections 312, 313, and 2877 of the Compiled Laws of 1907." Section 312 in effect provides that certain enumerated claims against a city shall be presented to the city council for allowance within thirty days after the injury or damages sued for arose, and, unless so presented, the right to prosecute the action is barred. It is made to appear from the record that the street improvement which respondent alleges caused the damages in question was completed on April 13, 1908; that claim for damages was duly filed with the city council on May 8, 1908; and that this action was commenced May 10, 1909. Appellant's counsel insist that the claim in this case was not one which was required to be lodged with the city council under the provisions of section 312, *supra,* but that the claim in suit is one which falls within the provisions of subdivision 1 of section 2877, *supra,* which, so far as material here, provides: "An action for liability created by . . . the statute of this state other than a penalty or forfeiture . . . shall be begun within one year." Counsel therefore contend that the right to bring this action was complete on April 13, 1908; that, inasmuch as it was unnecessary to file a claim, the filing of one could not extend the time within which an action must be begun, and as this action was not begun until May 10, 1909, the cause of action was barred by the provisions of section 2877, *supra.* Whether the foregoing contention is sound or not depends upon whether the

liability set forth in this action is one created by statute. Appellant's counsel assert that this action is grounded on section 282, Comp. Laws Utah 1907, which is to the effect that damages resulting to abutting property and the improvements thereon, by reason of changing an established grade of street, may be recovered in an action brought for that purpose. As we pointed out in *Kimball v. Salt Lake City, supra,* which was an action like the one at bar, section 282, just referred to, was adopted in 1896, after the Constitution of this state had been adopted, and said section was evidently passed for the purpose of harmonizing the statutory law of this state with section 22 of article 1 of the Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation." Appellant's counsel concede that this constitutional provision is self-executing, and to make it available required no legislative aid. The right to recover consequential damages for injury to private property by reason of making public improvements therefore does not rest upon section 282, *supra,* but is based upon the provision quoted from section 22 of article 1 of our Constitution.

As we have pointed out, the constitutional provision existed when section 282 was adopted. Moreover, the right to recover damages would continue precisely the same, although section 282 were repealed. If a right or liability—call it what you will—therefore existed before section 282 was adopted, such right or liability was not created by that section. Again, if the right or liability will continue in full force and effect, although that section were repealed, such right is not even exercised by virtue of that section. In other words, for the purposes of an action like the one at bar, the provisions of section 282 are not controlling or even material.

From what has been said, it follows that this action is not based upon section 282. Even though it be conceded, therefore, that the provisions of subdivision 1 of section 2877, *supra,* are applicable to section 282, yet, as this action is based upon the constitutional provision to which we have referred, this action is not affected by section 2877.

With respect to what is the limit within which actions for consequential damages to abutting property, which are caused by lawfully constructing or operating a steam railroad in a public street by authority of the city, must be commenced, we held, in *O'Neill v. S. P., L. A. & S. L. R. Co.*, 38 Utah 475, 114 Pac. 127, that such actions fall within the provisions of section 2883, Comp. Laws 1907, and hence are not barred, if commenced within four years from the time the cause of action accrued. The right to recover in the O'Neill Case, as in the case at bar, was based upon section 22 of article 1 of our Constitution. In so far as the statute of limitations is concerned, therefore, we can see no material difference between actions for consequential damages to abutting property, caused by the lawful interference by a railroad company by using a public street, which interference is based upon the authority of the city, and such interference by the city itself. In either case, if the improvement which causes consequential damages, whatever it may be, is authorized by law, and is executed with due and proper care, the abutting owner is nevertheless entitled to recover for such consequential damages by reason of the constitutional provision referred to, and not otherwise.

Nor is this action barred by the provisions of section 312, *supra*. This is so for the reason that, if it were necessary to file a claim in an action like this, then the claim was filed within the time provided by statute. In view, therefore, that the claim was filed in time, the question of whether the respondent was legally required to file one or not becomes entirely immaterial in this case; and hence we express no opinion upon that point.

There are a number of assignments relating to the admission and exclusion of evidence. If it were assumed that, with regard to some of the errors complained of, the court had technically erred, yet the errors, if any, are entirely harmless; and hence require no further consideration.

The next assignment relates to the damages which were allowed, by the court, and even counsel for respondent concedes

40 Utah—15.

that this is a question "worthy of serious consideration." At the trial respondent, over appellant's objections, was permitted to show that in lowering the grade of the street in front of her lot and dwelling house, in which she lived, appellant removed a row of shade trees which respondent had planted and cared for, and which were growing in the street; that said trees were both ornamental and useful, and the removal of which materially affected the market value of her property. It is conceded by counsel for respondent that the fee to the street on which the improvements were made is in the city; that in lowering the grade of the street the city proceeded lawfully; that it made the improvement with due care; and that in lowering the grade it was necessary to dig up and remove the trees in question. The court, after finding that in the year 1888 respondent had erected a dwelling house upon her lot, and had planted shade trees in front thereof in the street in question, further found that in changing the grade of the street, aforesaid, respondent's "real estate was damaged and diminished in market value in the sum of $2006.25; $1000 of such damages and diminution in the value being caused by the destruction of said shade trees planted in said street by the plaintiff (respondent), as aforesaid." Appellant now urges that the court erred in admitting and in considering the evidence regarding the destruction of said trees, and in allowing respondent any amount as damages therefor. The question is therefore squarely presented whether a city, while proceeding lawfully and properly in changing an established grade of a public street, is liable in damages for the removal of shade or ornamental trees which were planted and are growing in the street, and the removal of which was necessary and unavoidable in changing the grade of the street, the fee to which is in the city.

It is contended by counsel for respondent that, under section 22 of article 1 of the Constitution of this state, to which we have referred, the city is liable for whatever diminution of value was caused to respondent's lot, with the dwelling thereon, by the removal of the trees in ques-

tion. In other words, if, by reason of the removal of the trees, resondent's property was made worth less than it was with the trees standing in the street, she is entitled to recover such difference as consequential damages. The question is not free from difficulty; nor are the courts in perfect harmony with respect to the allowance of damages under such or similar circumstances. Upon a careful examination of the constitutional and statutory provisions of the different states upon which some of the decisions are based, and of the reasons that have induced the courts to decide particular cases in a particular way, the diversity of opinion among the courts is, we think, more apparent than real.

The decisions, roughly speaking, may be divided into three classes. In the first class, it is held that the question of whether, in removing trees without the owner's consent, it is necessary to remove them from the public street, where they were planted by the abutting owner, is one of fact, subject to review by the courts, and if, upon such a review, it be found that the trees were wantonly, unnecessarily, or negligently removed the city is liable; but if it be found that it was necessary to remove them, either as an obstruction, or in making a necessary and lawful improvement in the street, such as laying a sidewalk, or grading, or changing the grade, then the city is not liable, and the owner has no redress. *Frostburg v. Wineland,* 98 Md. 239, 56 Atl. 811, 64 L. R. A. 627, and *Wilson v. Simmons,* 89 Me. 242, 36 Atl. 380, are fair illustrations of the doctrine promulgated in the first class.

The cases coming within the second class hold that the question of whether an improvement in a public street and the removing of trees growing therein are necessary or not is in its nature legislative, and is one for the city authorities to determine, and when properly determined by such authorities their action is not reviewable by the courts. It is accordingly held, therefore, that, unless the city acts wantonly or negligently in removing the trees, the property owner has no cause of action against the city for removing them; nor can he review the question as to whether it

was necessary to do so. The following well-considered cases sustain the foregoing doctrine: *Chase v. City of Oshkosh*, 81 Wis. 313, 51 N. W. 560, 15 L. R. A. 553, 29 Am. St. Rep. 898; *Vanderhurst v. Tholcke*, 113 Cal. 147, 45 Pac. 266, 35 L. R. A. 267; *Tate v. Greensboro*, 114 N. C. 392, 19 S. E. 767, 24 L. R. A. 671; *Baker v. Town of Normal*, 81 Ill. 108, followed in *Mt. Carmel v. Shaw*, 155 Ill. 37, 39 N. E. 584, 27 L. R. A. 580, 46 Am. St. Rep. 311; *Kemp v. City of Des Moines*, 125 Iowa, 640, 101 N. W. 474; *Castleberry v. Atlanta*, 74 Ga. 170; *City of Atlanta v. Holliday*, 96 Ga. 546, 23 S. E. 509; *Laundry v. City of Lake Charles*, 125 La. 214, 51 South. 121; *Murray v. County of Norfolk*, 149 Mass. 328, 21 N. E. 757; *Miller v. Detriot, etc., Ry. Co.*, 125 Mich. 171, 84 N. W. 49, 51 L. R. A. 955, 84 Am. St. Rep. 569.

Judge Dillon, in speaking of the effect of the doctrine maintained by the foregoing cases, says:

"The title or interest of the abutting owner in the shade trees must *yield to the power of the city* to grade the street, or to build sidewalks, or otherwise improve it. For any injury resulting therefrom, the abutting owner has no redress." 2 Dill. Mun. Corp. (5th Ed.), sec. 721.

In *Castleberry v. Atlanta, supra,* the Supreme Court of Georgia, in speaking of the correlative rights of an abutting owner and the municipality with regard to shade trees growing in a public street, says:

"We think that shade trees on the city's sidewalks and streets belong to the city, and in grading the streets and sidewalks they may be removed, if necessary to the grading. There was no error in charging to that effect, and in charging that damage resulting from their being killed must have been caused by neglect and carelessness in the work. While there is a degree of convenience and comfort about the shade trees on sidewalks fronting a house, yet these must yield to the control of the city authorities over the public walks; and the court certainly went to the extreme of the law, when it authorized damages for negligently and carelessly killing them."

In *Laundry v. City of Lake Charles, supra,* the Supreme Court of Louisiana, in passing upon the right of the

municipality to remove shade trees growing in a public street, says:

"The municipality, for the purpose of improving the sidewalk, has the authority to remove trees without having to pay for their value, provided the removal is not wanton. Ornamental trees inspire a commendable sentiment, which moves the owner nearly always properly to consider them valuable. But the municipality, when an improvement becomes necessary, cannot, in the nature of things, be made to pay a considerable amount for shade trees."

In *Miller v. Detroit, etc., Ry. Co., supra,* Mr. Justice Grant, in speaking for the majority of the court, says:

"It is established beyond controversy that municipal authorities have the entire control over their highways, streets, and sidewalks, and may remove shade trees, whenever they are an obstruction to the use of the highway for public travel, without compensation to the owner."

The Supreme Court of Michigan, however, holds to the rule that before shade trees may be removed by the city the abutting owner must be notified to remove them, and upon his failure so to do the city may do so. This requirement was at one time statutory in Michigan, but the statute has apparently been repealed. Mr. Justice Hooker dissents from the proposition that the owner is entitled to notice, and contends that the city has the right to remove the trees without notice; his contention being based on the fact that the statute referred to is no longer in force in Michigan.

The Supreme Court of Illinois, in *Baker v. Town of Normal, supra,* says:

"The town, under its charter, has the control of the streets, may improve them and adorn them. It may permit its citizens to improve and adorn that part of the street in front of his lot, but the improvement and adornment does not thereby become the property of the citizen. The planting of a shade tree in a street by a citizen, by permission of the village or city authorities, is a gratuity to the public, and the citizen has no more right to control the shade tree so planted than he would have had it been planted by the city authorities."

In *Murray v. County of Norfolk, supra,* the rule prevailing in Massachusetts is stated in the headnote as follows:

"If trees standing within the lot limits of the street become an obstruction by reason of its widening, the town officers have the right to remove them, without making compensation to the abutting property owner."

It is, however, contended by respondent's counsel that many of the foregoing cases are not in point in this case, because in those cases the actions were not, like in the case at bar, brought to recover damages, but were brought to prevent the removal of trees. It is manifest, however, that the courts in those cases denied the relief, not because the action was equitable, but because the abutting property owner had no rights to vindicate under the circumstances. It is quite true that the courts might have denied equitable relief in those cases, when there was in fact a legal cause of action; but the courts in the equity cases certainly had the power to determine the question of whether the claimant had any rights, legal or equitable, in the subject of the action. Indeed, it would seem obvious that in determining whether a claimant has the right to invoke the aid of a court of equity the court must possess the undoubted power to determine whether any of his legal rights were invaded. If the claimant, in no event, has a legal right with regard to the subject of the suit, neither a court of equity nor of law can legally interfere in his behalf. Such is the status of the cases in which the proceedings were equitable, and, in our judgment, and in the judgment of all the courts and text-writers who have cited the cases to which we have referred, the cases are treated as authoritative upon the question of the right to recover for the removal of shade trees by the abutting owner. In our opinion, those cases have the same force and effect as precedents as those cases in which the action was one at law for damages. For the foregoing reason, we made no discrimination in referring to the cases.

We think that the doctrine promulgated and enforced in the cases which we have last cited is based upon sound principles, and, in our judgment, the doctrine is sustained by the great weight of American authority. Counsel for respondent assert (and this assertion is not questioned by counsel for appellant) that the cases to which we have just referred are not based upon constitutional provisions like those of section 22, art. 1, of our Constitution. This assertion was, no doubt, inadvertently made. In view, however, that the assertion is seriously made, and is not questioned, we have made a thorough search of the Constitutions and statutes of the several states from which we have cited cases to determine whether or not the assertion is correct. From the research we have made, we have become satisfied that if counsel had carefully examined either the constitutional or statutory provisions prevailing in the states referred to they would have discovered that in nearly all, if not all, of them provisions are found which require that just compensation must be made for damaging, as well as for taking, private property which is to be devoted to public use. For instance, in Wisconsin the statute provides that compensation must be made for both the land actually taken and for damages sustained to other lands, not taken, caused by the taking. (Stats. Wis. 1898, vol. 1, p. 683, sec. 925.) The same is true in Iowa. (McClain's Ann. Code of Iowa, vol. 1 p. 158, sec. 635.) In Louisiana the subject is covered by article 156 of the Constitution of 1879 of that state, which, in substance, is the same as ours. The same is true of California, as appears from section 14 of article 1 of the Constitution of that state. The same matter is covered by section 13 of article 2 of the Constitution of Illinois, which is the same as our own. Indeed, Illinois was one of the first, if not the first, states of the Union where the subject of making compensation for damaging private property for public use was provided for in the Constitution. While in Georgia there is no constitutional provision regulating the subject, yet in the Code of that state of 1910 (section 3627) it is provided that private

property cannot be taken for public use without making "just compensation to the owner for the interference with his exclusive rights." This certainly includes damages for any substantial interference with a property right, and is not limited to the actual taking of property. In Michigan the matter is controlled by statute, and in North Carolina we have been unable to find either a constitutional or a statutory provision concerning the subject. For obvious reasons, we have limited our research to those states from which we have cited cases.

It is, however, also insisted by respondent that the question is not whether the abutting owner has any property in or may recover the value of the trees, as such, when necessarily and lawfully removed by the city. It is insisted that the question is, what, if anything, of value have the trees added to the abutting property? In other words, will the removal of the trees affect the salable or market value of the abutting property in case of their removal? If their removal does so affect the property, then counsel contend that it is an element which should be considered in determining the damages that should be allowed the abutting owner. Three cases are referred to, namely, *Seaman v. Borough of Washington,* 172 Pa. 481, 33 Atl. 759, *McEachin v. City of Tuscaloosa,* 164 Ala. 263, 51 South. 153, and *Cook v. Ansonia,* 66 Conn. 429, 34 Atl. 187, in which the damages have been allowed in accordance with counsel's contentions. We have carefully examined those cases and the special constitutional and statutory provisions on which they are based. Section 8 of article 16 of the Constitution of Pennsylvania, so far as material here, provides: "Municipal and other corporations, and individuals, vested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements." Section 235 of the Constitution of Alabama, as adopted in 1901, and on which the decision in *McEachin v. City of Tuscaloosa, supra,* is based, is practically a transcript of the provisions we have

quoted from the Constitution of Pennsylvania. The Mc-Eachin Case was decided in December, 1909, and is con-cededly based upon the constitutional provision aforesaid. Notwithstanding said provision, however, two of the Jus-tices of the Supreme Court of Alabama filed a strong dis-senting opinion, in which the law is stated as, in the absence of special statutory provisions, we contend it to be. This is recognized by the majority of the court, as appears from '164 Ala. 266, 51 South. 154, where it is said:

"We would make no war upon the opinion of Justice Sayre, as concurred in by the Chief Justice, if section 235 of the Constitution did not exist."

The constitutional provision of Alabama is also found in the Constitution of 1875 of that state, and was under consideration in *City of Montgomery v. Maddox,* 89 Ala. 181, 7 South. 433, where, at page 186, Mr. Justice Somer-ville, in referring to the particular language of the Ala-bama Constitution says: ·

"I do not discover precisely this same language in the Consti-tution of any other state, except those of Alabama and Pennsyl-vania."

Neither have we been able to do so. While in the Penn-sylvania case nothing is said with regard to the constitu-tional provision, yet it is clear that the decision is based upon that provision. This conclusion is almost unavoid-able, for the reason that the whole matter is disposed of in one sentence, and not a single case is cited in support of the rule. This disposes of the Pennsylvania and Ala-bama cases.

In disposing of them, it is not necessary for us to deter-mine whether the constitutional provisions referred to in those states were properly construed or not. It is sufficient for us to know that those courts have given them a broad and liberal construction. This is apparent from the lan-guage used in the Alabama case to which we have referred.

The case of *Cook v. Ansonia, supra,* is also based upon a special statute in force in Connecticut. This statute is set forth in the case of *Platt v. Town of Milford,* 66 Conn. 320, 34 Atl. 82. In the Cook Case, the statute is referred to as having been construed in the Platt Case, and for that reason the rule, as announced in the Cook Case, was applied. In view of the special constitutional and statutory provisions prevailing in the states of Alabama, Pennsylvania, and Connecticut, which, by those courts at least, are held to be broader than our own, we are of the opinion that those cases should not be permitted to control the question in this state. In our research we have found one other case which holds to the same rule that is adopted in the three states last referred to, namely, the case of *Walker v. City of Sedalia,* 74 Mo. App. 70. The rule in that state is, however, expressly based upon the fact that in Missouri the fee to the street is in the abutting owner. From this fact the court deduces a property right in the abutting owner in the trees growing in the street, for which he is entitled to recover when the removal thereof diminishes the market or salable value of his property. It is, however, frankly conceded by the court in that case that the rule is otherwise, where the fee of the street is in the municipality. In announcing the rule, the Missouri court relies on no decisions, except those of that state. It will also be noted that both in Pennsylvania and in Alabama the fee to the street is in the abutting owner. It is also true that in no case cited from the four states referred to, where the rule contended for by respondent's counsel has been adopted, is the decision based upon the general law as the same is declared by the courts, but is based entirely upon local provisions, either constitutional or statutory. It may also be said that in a number of the cases which we have cited, in which a recovery for trees growing in the public streets is denied, the fee is in the abutting owner, but this fact, standing alone, was not considered controlling; nor do we think it should be. It is worthy of remark, however, that no case has been found,

where the fee was in the city, that a recovery for the removal of shade trees was allowed when such removal was lafully made.

So far as we know, we have referred to about all the cases in which the relative rights of the municipality and the abutting owner to shade or ornamental trees planted and growing in the public streets are directly considered. We confess our inability to understand how the abutting owner, who is a mere licensee of the municipality, in the absence of an express statute, can acquire a property right in trees which he may enforce, as against the municipality, in case it becomes necessary to remove them in making a public improvement in the street, when such improvement is made in a careful and lawful manner. In the case at bar, the soil had to be removed in front of respondent's premises to a depth of about two and one-half feet at one side and to about five and one-half at the other. This difference in depth resulted from the fact that the premises are situated on the slope of a hill, and for the further reason that, in order to pave the street properly, the natural grade had to be reduced. It is self-evident that in making the surface of a street hard and smooth by an artificial pavement the grade in many places must be reduced from the natural grade. This is necessary in order to make it possible for teams to haul loaded vehicles up the grade, where the surface has been made hard and smooth. In this case the soil had to be removed, and with it removed the trees could not remain where they grew.

It is contended by counsel, however, that, inasmuch as respondent could and did recover damages which were caused to her property by reason of removing the soil, for the same reason, and upon the same principle, she should be permitted to recover for the removal of the trees. The fallacy of this contention lies in the assumption that respondent recovered for the removal of the soil. The true ground upon which her recovery is based is that in removing the soil her retaining wall was destroyed, and the convenient ingress and egress to and from her property was

prevented. In this way, there was a substantial interference with the use of her property which reduced the market or salable value thereof. If she is permitted to recover for the removal of the trees growing in the public street, however, then she could do so, although she had in no way been hindered in the use and occupation of her property. In removing the soil, so as to interfere with the use of her property, she suffered a direct and substantial injury. In removing the trees, however, the city only removed that in which respondent had no property right as against the city, and that which in no way interfered with the use of her property, or in having access thereto. No doubt, as against any one who unlawfully interfered with the trees, respondent, as an abutting owner, could recover for any injury she might have sustained. This is so, however, because, as against a wrongdoer, her right as a mere licensee of the city would be quite sufficient to sustain her action. Not so as against the city, because, as against it, she has no rights, so long as the city, in interfering with the trees, acted pursuant to law and in a careful manner. While the precise question here presented was not involved in the case of *Morris v. Salt Lake City*, 35 Utah, 474, 101 Pac. 373, and while the decision in that case is not controlling here, yet all that we there said with regard to the rights of the abutting owner in shade trees growing in a public street is applicable here.

After a careful consideration of the decisions of the courts of last resort and of the constitutional and statutory provisions upon which the decisions rest, we are forced to the conclusion that the respondent is not entitled to recover any damages for the removal of the trees, for the reason that such damages, under the circumstances, are *damnum absque injuria*. The court therefore erred in admitting the evidence and considering the same, and in allowing the sum of $1000 as damages for the removal of the trees in question. In view, however, that the specific amount allowed by the court for the trees is stated in the findings, and there being no cross-appeal and no cross-assignment of

error by respondent, it is not necessary to remand this case for a new trial.

The judgment entered by the trial court for the sum of $2006.25 is modified by deducting therefrom, as of the date the judgment was entered, the sum of $1000 allowed for the trees, and as so modified the judgment is affirmed. Neither party to recover costs.

McCARTY and STRAUP, JJ., concur.