## Dare v. City of Harrisburg et al.

J. W. Swartz, for plaintiff.

John R. Geyer and Paul G. Smith, for defendants.

HARGEST, P. J., November 5, 1930.—This cause comes before us upon bill, answer and testimony.

### Statement of pleadings.

The plaintiff, an owner of a property at the southeast corner of Second and Boyd Streets, in the City of Harrisburg, brings this suit against the defendants.

The bill avers that there is a full-grown Carolina poplar shade tree thirty-five years of age, healthy and in vigorous condition, beautiful and ornamental, in front of his property. In 1925 the City of Harrisburg, by ordinance, created a Shade Tree Commission. Said commission, at a meeting held about February, 1927, after notice as provided by law, condemned this tree and other Carolina poplar trees in the neighborhood embraced in the notice and intended to remove it and plant another tree in its place. The tree was not removed. Subsequently, on September 3, 1929, notice was given that the Shade Tree Commission would hold a meeting September 16, 1929, to consider the removal of trees in this and other localities mentioned in the notice. The said tree was ordered removed, notwithstanding the statute does not provide for compensation to the owner, and said statute is, therefore, invalid and the action of the defendant arbitrary, unreasonable and an abuse of discretion. The statute is unconstitutional because its title gives no notice of any provision authorizing the removal. There is a twelve-inch terra cotta sewer on the western side of Second Street twelve feet below the surface, thirty-five feet distant from the tree, constructed about twenty-five years ago, with joints improperly cemented or packed, but which never failed to function until the summer of 1929. The defendants arbitrarily and unreasonably propose to remove the tree because it has a tendency to damage said sewer.

The answer admits the general condition of the tree but avers that it is not a desirable tree and because of its species adds little value to the property; that its removal was determined upon because the Carolina poplar is an undesirable tree. It avers that the roots of this particular tree had, on several occasions, completely clogged the sewer in question so that it had to be dug up; that much damage was caused to the sewer and annoyance and inconvenience to the owners of properties connected with it and that the tree will continue further to damage the sewer unless removed, and will require a new sewer to be laid at the cost of many thousands of dollars. The defendants deny that the sewer was improperly laid, but aver that it was constructed according to the standard adopted practice at that time.

Testimony was taken. In addition to the findings which we have made in answer to requests, we make the following

### Findings of fact.

1. In August, 1925, the City of Harrisburg, by ordinance, duly accepted the Act of May 31, 1907, P. L. 349, providing for the planting and care of shade trees, and established a shade tree commission.

2. The plaintiff owns in fee simple a lot of ground situate at the southeast corner of Second and Boyd Streets, between Reily and Harris Streets, in the City of Harrisburg, upon which is erected a dwelling house in which he resides.

3. Six feet within the curb line on Second Street and twelve and one-half feet within the curb line on Boyd Street, there is a full-grown Carolina poplar shade tree about thirty-five years old, in a healthy and vigorous condition, which mitigates the heat of summer, is beautiful and ornamental and adds somewhat to the market value of the plaintiff's property.

4. There are nine full-grown Carolina poplar trees on the east side of Second Street in the block in which the plaintiff's property stands, which were planted about the same time and are healthy, vigorous and in good condition.

5. About September 16, 1929, the Shade Tree Commission, against objections of the plaintiff, determined to remove the plaintiff's shade tree and to plant in its place a Norway maple tree. This latter tree is adapted to the soil and climate.

6. The Carolina poplar is a tree which grows rapidly, is short-lived and has quantities of fibrous roots which extend great distances, as far as 100 feet, in search of water. The roots have a tendency to penetrate the smallest crevices, and particularly enter sewers to secure the moisture and food.

7. The City of Harrisburg maintains a twelve-inch terra cotta sewer on the western side of Second Street, between Reily Street and a point about 180 feet north of Harris Street, twelve feet below the surface, about thirty-seven feet nine inches from the plaintiff's tree, which sewer was built about twenty-five years ago and continued to function satisfactorily until two years ago.

8. This sewer was clogged in June and September, 1929, and had to be dug up. Each time there was taken from the sewer about three bushels of small matted Carolina poplar roots. The plaintiff's tree is the nearest poplar tree to the point where the sewer was stopped. The clogging of the sewer caused the water to back into the cellars of the houses on the western side of the street, between Boyd Avenue and Harris Street, much to the annoyance of the occupants of those houses.

9. When the sewer was clogged in June, 1929, the City of Harrisburg built a manhole so as to be able to remove the roots in the future. It is difficult to construct a sewer which will not crack sufficiently to admit the roots of a Carolina poplar tree, because they enter extremely small crevices, and a slight settling of a sewer is likely to produce such cracks and crevices. The roots greatly multiply after the root finds entrance.

10. The cleaning of the sewer in 1929, after it had been cleaned in June, was accomplished with considerable difficulty and required a motor-driven machine with cables and buckets to accomplish it.

11. The maintenance of the Carolina poplar tree is likely to continue the annoyance to the properties connected with the sewer and to put the City of Harrisburg to continual cost and expense in cleaning the sewer of the roots, and may also require the building of a new sewer.

## Discussion.

The plaintiff contends that under the pleadings there is no present jurisdiction in the court to determine whether this tree is a nuisance; that in order to bring that question in issue the defendant must, under Equity Rule No. 52, aver the nuisance as "new matter."

Equity Rule No. 52, after declaring that an answer to a bill must be specific, provides:

"After fully answering the allegation of the bill, the defendant must aver such additional facts, having a direct relation to any of the causes of action set forth in the bill, as he believes will entitle him to affirmative relief against plaintiff, and such other facts as may tend to invalidate an anticipated defense on plaintiff's part; and, either with or without setting forth additional facts, may pray such relief as he shall deem himself entitled to under the pleadings. To the additional facts, if any, he may require plaintiff to reply within fifteen days after service of the answer. . . ."

This rule does not apply to a case such as the one before us. The bill in this case avers that the action of the Shade Tree Commission proposing to remove the tree "is arbitrary, unreasonable and an abuse of any discretion which the said statute may be regarded as having vested in the said defendants," and that the joints of the sewer at Second Street were not cemented or packed so as to prevent the roots of trees entering it. The answer denies those averments specifically, and, further, specifically avers that this sewer became clogged and stopped on several occasions so that the storm water with

sewage backed up into the cellars on the western side of the street; that in cleaning the sewer large masses of poplar roots were taken from it; that the continuance of the tree will be a nuisance and inconvenience to the property owners using the sewer and will require constant care by, and impose constant expense upon, the city. It may also result in the construction of a new sewer.

The plaintiff, therefore, having questioned the legality of the action of the Shade Tree Commission, the defendants had a right to answer, showing the reasons for such action. The plaintiff having averred the poor construction of the sewer, the defendants had the right to show the character of that construction and the character and tendency of the roots of the Carolina poplar trees to penetrate and clog sewers. The averments of the answer do not constitute additional facts or new matter which should be set up in the nature of a cross-bill requiring a reply thereto. No affirmative relief is suggested. The matters averred in the answer are responsive to the bill and give the court jurisdiction to inquire whether the tree is a nuisance.

The case of New Castle *v.* Raney, 130 Pa. 546, in which a mill dam, if it was a nuisance, became such because the City of New Castle grew around it, and the other cases cited by the plaintiff, are not controlling here. This is a case in which the tree grew out to the sewer and stopped it, and thus the tree itself actively became a nuisance.

2. Is the Shade Tree Commission Act constitutional? The Act of May 31, 1907, P. L. 349, is entitled:

"An Act to provide for the planting and care of shade-trees, on highways of townships of the first class, boroughs and cities of the Commonwealth of Pennsylvania and providing for the cost thereof."

Section one of the act authorizes the creation of a shade tree commission "who shall have exclusive and absolute custody and control of, and power to plant, set out, remove, maintain, protect, and care for, shade-trees, on any of the public highways." Section three provides for the planting, removing and changing of shade trees after notice given of the meeting at which the contemplated work is to be considered. Section four authorizes the imposing of the costs of planting, transplanting and removal upon the property owner.

The defendant contends that this act does not authorize the removal of a tree because its title does not express that intention, and the act is, therefore, unconstitutional in so far as it attempts to authorize removal. Defendant also contends that the act is not a procedure act and does not give the Shade Tree Commission the authority to remove trees because they become nuisances.

Discussing the second proposition first, we note that where a shade tree commission is established it is given the "exclusive and absolute custody and control" of shade trees. Assuming, therefore, that the power to remove is given to the commission, we are of the opinion that they may remove a tree under the wide power bestowed upon it when the tree becomes a nuisance, as well as for other reasons.

The question of whether the title is broad enough to sustain the power of removal is somewhat more serious.

Legislative titles have undergone a considerable evolution since our Constitution of 1873 provided, in section three of article III, that "no bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title." The legislation which followed shortly after the adoption of the Constitution shows that the legislators of those early days, having among their members some of those who served in the convention which framed the Constitution, did not regard this provision as a requirement that a title should

be somewhat of an index. The Act of June 7, 1879, P. L. 112, is entitled: "An act to provide revenue by taxation." There is no indication whether it imposes taxes upon individuals or corporations, or whether it refers to state or local taxation. That title has been carried through all the amendments of this taxing statute. The Act of May 23, 1889, P. L. 277, is entitled "An act providing for the incorporation and government of cities of the third class," and it has very comprehensive provisions. The Act of June 8, 1891, P. L. 217, entitled "An act to create a Banking Department" includes all of the subjects relating to that great department of the state government. Subsequently, the legislatures began to enlarge very much in titles, and now the recent decisions of the appellate courts have clearly indicated that these extensive titles are not required. It is necessary to cite only a few of the great number of cases upon this subject.

In Graeff v. Schlottman, 287 Pa. 342, 345, the principles are succinctly stated as follows:

"A statute will not be declared unconstitutional unless it is clearly so. See Com. ex rel. v. Snyder, 279 Pa. 234; Com. v. Mintz, 19 Pa. Superior Ct. 283. Every doubt must be resolved in favor of its constitutionality: Com. ex rel. Wolf v. Butler, 99 Pa. 535. It is contended that the title of the act violates section 3 of article III of the state Constitution in failing to give notice of the subject of the enactment. We are not impressed with this contention. If the title fairly gives notice of the subject of the act so as reasonably to lead to an inquiry into the body of the same, it is all that is necessary: Gas and Water Co. v. Downingtown Borough, 193 Pa. 255; Allegheny County Home's Case, 77 Pa. 77; Com. v. Lloyd, 2 Pa. Superior Ct. 6, affirmed in 178 Pa. 308. The title need not, and in fact should not, go into details so as to be an index to the contents of the bill. See Page v. Carr, 232 Pa. 371. In the language of Judge, now Mr. Justice Kephart, speaking for the Superior Court in Carr v. Ætna, etc., Co., 64 Pa. Superior Ct. 343, 349: 'Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared a violation of the Constitution by reason of its title offending section 3, of article III.' "

In Specktor v. Hanover Fire Ins. Co., 295 Pa. 390, it is held:

"That section of our Constitution does not require the title of a statute to be an index of its contents; but only that it should be sufficient to cause one having a reasonably inquiring state of mind to examine the contents in order to determine whether or not he may be affected by them." See, also, Knowles's Estate, 295 Pa. 571; Page v. Carr, 232 Pa. 371.

The title of this act provides for the "planting and care of shade trees." It does not require much of a stretch of imagination to conclude that the care of shade trees includes the removal of them if and when they have outlived their usefulness or for any other reason become a nuisance. The power to plant a tree is unlimited. It includes the power to replace one where a tree has decayed or been broken by storm. Such replacement presupposes power to remove. This title certainly puts a reasonably inquiring mind on notice that planting and care may include removal. It is certainly sufficient to lead to an inquiry into the body of the act to see what the planting and care indicated in the title includes. The removal of a shade tree is not "a substantive matter entirely disconnected with" the care, as said in Carr v. Ætna Ins. Co., supra.

In Bushong v. Wyomissing Borough, 25 Dist. R. 690, 695, the Shade Tree Commission Act was attacked as unconstitutional and upon this subject the court said:

"If the tree were a nuisance, decayed, not adapted to the soil or locality wherein it stood, or for other equally sufficient reasons should be removed, then we are of the opinion that the commission clearly, under this act, would have the power to remove it. . . .

"Under this interpretation of the power of removal we are of the opinion that there is no merit in plaintiff's claim that the act is unconstitutional. What is required is a reasonable and common sense construction of this act, and thereby bring about the purpose expressed in the title. So construed we consider the act constitutional. . . ."

We, therefore, conclude that the title is sufficient to justify the provisions for removal in the body of the statute.

3. Has the Shade Tree Commission exceeded its authority? The Third Class City Act of June 27, 1913, P. L. 568, art. v, section 3 (9), authorizes cities to construct and reconstruct sewers; paragraph forty-six of the same section, to make all ordinances, rules and regulations for the "good government, safety and welfare of the city," and paragraph sixteen of the same section, to require the removal of all obstructions at the expense of the person or persons placing the same there.

We have already called attention to the fact that the Shade Tree Act of 1907 gives the Shade Tree Commission the "exclusive and absolute custody and control of and power to plant, set out, remove, maintain, protect and care for shade trees." This language gives the commission the exclusive power to remove. When the removal of a tree is contemplated the commission is the municipal agency which must consider and determine that question, whether the removal be because the tree has become a nuisance or for some other reason.

It seems to be well settled that a municipality has a right to control trees and to remove them and that courts will not interfere unless there is an abuse of discretion or the power is exercised wilfully, wantonly and unnecessarily. Where they become a nuisance, the municipality does not act in the exercise of eminent domain but under the police power and needs no permissive statute.

Nor is it required to make compensation. The principles are well stated in 4 McQuillin, Municipal Corporations (2nd ed.), § 1431:

"Without regard to who owns trees in the street, the municipality has the right to control them, and it may in proper cases in the interest of public safety, convenience or health, cut them down. It is well settled that a municipality, even in the absence of a permissive statute, may remove trees, when necessary as against the objection of the abutting owner, without compensation, in connection with making improvements on the street, or where they are an obstruction to travel. For example, to improve and render a highway safe and convenient for travellers, to carry out a plan or system of street improvements, or to prevent the roots of trees from clogging a city sewer." See, also, 44 C. J. 935.

In Rosenthal v. City of Goldsboro, 149 N. C. 128, 62 S. E. 905, 20 L. R. A. 642, 16 Ann. Cas. 639, 642, it is held that the general power of the municipality over its streets extends to the removal of trees for the preservation of city sewers, as well as for their removal as an obstruction to travel; that for such removal the property owner is not entitled to compensation. In referring to another of its own cases the court said:

"But the dominant principle discussed and applied was in reference to the general power of a municipal government over its streets when exercised for the benefit and convenience of the public; and this principle is none the less potent, and its application none the less necessary, because the motive and

purpose of exercising the power was for the preservation of the city sewerage. . . . In a matter of such supreme and controlling importance, it would lead to most deplorable results if municipal governments could be stopped or hindered in their efforts, taken in good faith, to preserve the public health."

The same principle as applied to the removal of trees obstructing sewers is sustained in Schaller v. Tacoma, 99 Wash. 159, 168 Pac. 1136, and City of Birmingham v. Graves, 200 Ala. 463, 76 So. 395. In the latter case it is also decided that the cutting down of trees interfering with the sewerage system is the exercise of police power and not of the power of eminent domain. Where the municipal authorities have resolved that a shade tree is a nuisance, the abutter cannot question this conclusion (Murray v. Norfolk County, 149 Mass. 328, 21 N. E. 757) unless the action of the authorities is so arbitrary as to be an abuse of discretion: City of Paoli v. Wentz, 79 Kan. 148, 98 Pac. 775. Even then, every reasonable intendment of good faith should be indulged in: Remington v. Walthall, 82 Kan. 234, 108 Pac. 112. See, also, note, 16 Ann. Cas. 642.

The plaintiff relies upon the cases of Dilts v. Stockton, 73 N. J. L. 158, and Bushong v. Wyomissing Borough, 25 Dist. R. 690. These cases do not sustain his position. In Dilks v. Stockton, the removal of the tree was attempted to be justified for the construction of a sidewalk under an ordinance based upon a statute which gave the right to regulate the planting and protection of trees. It was held that this power did not authorize the summary removal of growing trees without notice to the owner, and that trees are not necessarily unlawful encumbrances or encroachments; that there was no attempt made to adjudge that the tree in question was an obstruction, encroachment, encumbrance or nuisance.

In the instant case, however, a notice was given, the hearing had, objections made and the tree has been found to be a nuisance.

In Bushong v. Wyomissing Borough, supra, the municipal authorities, for the sake of uniformity, attempted to remove Norway maple trees (which is the species intended to be substituted in the instant case), which were well adapted to the conditions in the borough, and to plant in its place a tree known as the Crimean linden, which was not theretofore tried in the borough, and the suitableness of which as a shade tree was experimental. In that case it was very properly held that shade trees were not nuisances per se, and that the removal of beautiful and ornamental trees which add to the desirability and the value of properties, merely for the sake of uniformity, would be exercising an unreasonable and arbitrary power. In that case the court used this language, distinguishing it from the instant case:

"If the tree were a nuisance, decayed, not adapted to the soil or locality wherein it stood, or for other equally sufficient reasons should be removed, then we are of opinion that the commission clearly, under this act, would have power to remove it."

In the instant case there is no question of the removal of the tree for the purpose of making municipal improvements, thus exercising the power of eminent domain or merely removing the tree to plant a tree of another kind, which may not be any better adapted to the soil and environment. The question is whether the city has the right, in the exercise of its police power, to direct the removal of a tree which has become a nuisance. We base our decision on that proposition alone.

It is a serious matter to destroy a beautiful shade tree and thus somewhat diminish both the market value and the advantages of one's home. But when the tree has become a nuisance and the municipal authorities have upon proper evidence so determined, the court cannot say that a determination to

remove such tree is either arbitrary or unreasonable. It follows that we have no choice except to sustain the Shade Tree Commission.

### Conclusions of law.

1. The pleadings sufficiently raise the question as to whether the tree involved is a nuisance.

2. The title of the Act of May 31, 1907, P. L. 349, is sufficiently comprehensive to sustain the power of removal contained in the body of the act.

3. The Shade Tree Commission, under the act, is the municipal agency to determine the question of the removal of a shade tree, whether it be removed for nuisance or for other reasons.

4. The plaintiff's tree has become a nuisance in that its roots have repeatedly clogged up the sewer in Second Street.

5. Aside from the provisions of the Shade Tree Act of 1907, the City of Harrisburg has authority to remove as a nuisance a shade tree, the roots of which have entered a public sanitary sewer, stopping the same and causing the sewage to be backed up into the properties connected therewith.

6. The bill of complaint must be dismissed at the cost of the plaintiff.

### Decree nisi.

Now, November 5, 1930, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the bill of complaint be dismissed, at the cost of the plaintiff.          From Homer L. Kreider, Harrisburg, Pa.