(76 South. 395)

CITY OF BIRMINGHAM et al. v. GRAVES.
(6 Div. 417.)

(Supreme Court of Alabama. June 14, 1917.)

1. EMINENT DOMAIN ⬅69—PROPERTY TAKEN BY CITY—NATURE OF THE USE.

Under Const. 1901, § 235, with reference to compensation for property taken for public use, recovery is confined to instances where the municipality is engaged in the construction or enlargement of its works, highways, or improvements.

2. EMINENT DOMAIN ⬅2(6)—TREES—INTERFERENCE WITH SEWER—POLICE POWER.

The cutting down by the city of trees interfering with its sewage system was an exercise of its police power and not an exercise of the power of eminent domain within Const. 1901, § 235.

3. INJUNCTION ⬅77(1)—TEMPORARY INJUNCTION—EVIDENCE—SUFFICIENCY.

Where complainant's bill to restrain defendant city from cutting down certain of his trees rested upon the theory that the power of eminent domain was involved, and the answer of the city supported by affidavits disclosed the exercise of the police power by the city in that the trees constituted a continuous obstruction to the sewage system of the city and complainant did not amend his bill and deny that the maintenance of the trees was a continuing nuisance, a temporary injunction was improperly granted.

4. MUNICIPAL CORPORATIONS ⬅623(1) — POLICE POWER.

A city has the right under its general police power to abate a continuous nuisance, although conditions of its ordinance in reference thereto be invalid where due notice of an intention to abate is given the owner.

Sayre, Somerville, and Thomas, JJ., dissenting.

Appeal from Chancery Court, Jefferson County; A. H. Benners, Chancellor.

Bill by W. H. Graves against the City of Birmingham and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

M. M. Ullman and W. H. Sadler, Jr., both of Birmingham, for appellants. A. G. & E. D. Smith, of Birmingham, for appellee.

GARDNER, J. The statement of the case, found in the dissenting opinion of Mr. Justice THOMAS as well as a discussion in brief of counsel for appellee, discloses that the bill was filed upon the theory that the city was proceeding to take, injure, or destroy the complainant's property without first making just compensation therefor, in violation of section 235 of our Constitution, and reliance was had upon the case of McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 South. 153.

A bill of this character, coming within the provisions of section 235 of the Constitution, would, of course, have equity. McEachin v. City of Tuscaloosa, supra; Town of New Decatur v. Scharfenberg, 147 Ala. 367, 41 South. 1025, 119 Am. St. Rep. 81. In the latter case, it was held that when such a bill is filed the city answering the bill and admitting the essential averments thereof, and that the public work was proceeding, would have the right to have a reference, and, the amount of damages ascertained, to pay the same into court and thereby obtain a dissolution of the injunction, so that the work might be proceeded with.

[1] The right of recovery of compensation by the property owner, under the provisions of section 235 of the Constitution, is confined, of course, to where the municipality is engaged in the construction or enlargement of the works, highways, or improvements of the city. Distinct reference to this fact was made in City Council of Montgomery v. Maddox, 89 Ala. 181, 7 South. 433, in the following language (with italics as there found):

"Under our Constitution, the right of recovery in such cases is limited, of course, to property taken, injured, or destroyed in a particular mode, viz. 'by the *construction* or *enlargement*' of the works, highways, or improvements of the defendant corporation."

To the same effect was the language used in City Council of Montgomery v. Townsend, 80 Ala. 489, 2 South. 155, 60 Am. Rep. 112, where it was said:

"Unless the injury or destruction is produced by a construction or enlargement of some work, highway, or improvement, which is a consequence of the use of the privilege of taking private property for public use, no liability for damages arises, under the Constitution."

We do not find that this has ever been questioned, and, indeed, it would seem to be beyond a doubt from the very language of the Constitution.

[2] The material averments of the answer are set forth in Mr. Justice THOMAS'S opinion, and need not be here repeated. Suffice it to say that the answer in substance sets up, in justification of the action of the city, that the trees here in question had become a continuous nuisance, and that the destruction thereof would be but the exercise of the police powers of the city, and the protection of the inhabitants in caring for their health and comfort, and necessary in order that the city might perform its municipal duty of keeping the public sewerage open. The answer also discloses that the ordinance here discussed was enacted in aid of the city in the exercise of this police power, and the abatement of this nuisance as therein alleged. It is quite clear, therefore, that the answer shows the threatened destruction of these trees was not in the exercise of the power of eminent domain under the Constitution, or "an enlargement or improvement" of the ways, etc., of the city within the meaning of section 235 of the Constitution, and therefore said constitutional provision was

not here involved; but, on the contrary, it was in the exercise of the police power of the city.

The opinion of Mr. Justice THOMAS treats the case of McEachin v. City of Tuscaloosa, supra, as being vitally involved, and proceeds to overrule the same. That case is here involved, only incidentally, as concerning the equity of the bill. The McEachin Case was decided by a divided court, and was evidently a stubbornly contested litigation. The case construed the provisions of our own Constitution, which in this respect is similar to that of the state of Pennsylvania.

In Dallas County v. Dillard, 156 Ala. 354, 47 South. 135, 18 L. R. A. (N. S.) 884, it was pointed out that the constitutional provision here referred to was copied from that of Pennsylvania, and the construction given the same by the court of last resort of that state is in accord with the holding in the McEachin Case, supra, citing Chester Co. v. Brower, 117 Pa. 647, 12 Atl. 577, 2 Am. St. Rep. 713. In this connection the more recent case of Seaman v. Washington, 172 Pa. 467, 33 Atl. 759, may also be cited.

The McEachin Case was decided several years ago, and involves one of the fundamental constitutional property rights of citizens as against the power of eminent domain of the municipality. The decisions of other states and numerous text-writers should have but slight weight here, as they do not involve similar constitutional provisions. Touching as it does one of these fundamental property rights, clearly, the rule of law should become settled so that the citizen may know his rights, and the municipality recognize its limitations, and, in our opinion, the principle of stare decisis should be here firmly applied. We are not in harmony therefore with the adverse criticism of the McEachin Case as set forth in Mr. Justice THOMAS'S opinion, and do not think it should be overruled, but, on the other hand, should be reaffirmed as the established law of this jurisdiction.

We are further of the opinion, however, that upon the merits of this case the McEachin Case is really not involved. Our position may be made more clear by the following simple illustration: The abutting property owner has trees on the margin of the sidewalk, which in no manner obstruct the same or interfere with the use thereof, but which add both ornament and comfort to his premises, and therefore are of value; if the municipality sees fit to widen the street, and this involves a destruction of these trees, then, in our opinion, section 235 of the Constitution comes to his rescue, and the McEachin Case would be there found applicable. If, however, on the other hand, the property owner should plant a tree in the center of the sidewalk and thus obstruct the same, he would create a nuisance which the city could abate without any compensation whatever; and, indeed, it would be the duty of the municipality to remove the tree. In the latter instance, of course, the provisions of the Constitution would have no application whatever, and this, in our opinion, is the instant case as set up in the answer which was undenied.

The removal of the obstruction from the sewerage would no more be such an improvement, as within section 235 of the Constitution, than would the removal of the tree placed in the center of the sidewalk in the illustrated case.

[3] Temporary injunction in this case was not ordered upon presentation of the same to the chancellor, but was set down for hearing on a certain day, as prescribed by section 4528 of the Code of 1907, on which day the answer was filed by the defendant, together with two affidavits in support thereof. These affidavits disclose that the trees presented a continuous obstruction to the sewerage system of the city, and that the sewerage was constructed of standard approved material for that purpose, and in a workmanlike manner, and, further, that it is impracticable to construct a sewer so that an opening as large as a pencil point will not occur, and that the destruction of the trees was necessary to abate the nuisance.

The complainant submitted his case upon the bill only, the averments of which were sworn to by him, and the substance of which is stated in the opinion of Mr. Justice THOMAS. It contained no answer whatever to the allegations of the answer of the city, and this, we presume, for the reason that evidently complainant was proceeding upon the theory that section 235 of the Constitution, as construed in the McEachin Case, fully controlled the situation.

Upon a hearing for a temporary injunction, as provided for under section 4528 of the Code, this court, in McHan v. McMurry, 173 Ala. 182, 55 South. 793, held that the complainant, on such a hearing, is the actor, and can be aided by no rule of favor, like that of assumed amendment; that his bill must be determined, as to its equity, upon the averments contained in it, "unaided by construction and unamplified by assumed amendment"; and in Nelson v. Hammonds, 173 Ala. 14, 55 South. 301, speaking of the statute which permitted the introduction of affidavits on the hearing of the motion to dissolve the injunction, the court held that the conclusions for or against dissolving an injunction must, under the statute, be here treated as any other finding of fact at equity upon a defined issue, and, in effect, the decision, of course, applies the same rule to section 4528, here being considered.

We are presented here, therefore, with this situation: The bill as filed rests upon the theory that the provisions of section 235 of the Constitution are involved, and that the city was in the exercise of the power of eminent domain. The answer discloses, to our mind too clear for discussion, that the city

was not in the exercise of the power of eminent domain, or in the enlargement or improvement of its ways or works within the meaning of the Constitution; but in the exercise of its police power, in the abatement of a continuous nuisance, and its answer is fully supported by the affidavits offered on the hearing of the application for the injunction. The complainant offered nothing to the contrary. The answer therefore is fully proved—is not contradicted—and, indeed, it would seem for all practical purposes to have been confessed. Under the former decisions of this court, above cited, construing this statute, the. complainant is regarded as the actor and is to be accorded no rule of favor.

With this situation, as disclosed by the record, we are unable to see wherein the chancellor was authorized to issue the temporary injunction. The answer and the affidavits, undenied, certainly cannot be disregarded. If the complainant had seen proper, he should have amended his bill so as to have met the issues presented by the answer, and have alleged that the city, in the exercise of its police power, was threatened to do serious damage to his property, because it was claimed that it was a continuous nuisance, when in fact such was not the case, and offered affidavits in support thereof. Or, it may be, in cases of this character, though not necessary to be determined, that if the complainant intended to admit the nuisance, he could have declared his purpose to himself, abate the same—if such were possible—and ask protection pending such abatement (Romano v. B. R., L. & P. Co., 182 Ala. 335, 62 South. 677, 46 L. R. A. [N. S.] 642, Ann. Cas. 1915D, 776; Kyser v. Hertzler, 188 Ala. 658, 65 South. 967); but no such course, as here suggested, was followed. He rested his case evidently upon the theory that the authority of McEachin v. City of Tuscaloosa, supra, gave him full protection. As previously stated herein, we think the answer discloses that the McEachin Case is without application here.

[4] Nor do we consider it material that some provision of the ordinance referred to may be of doubtful validity, as we think the city has the right, under its general police power as disclosed by Mr. Justice THOMAS'S opinion, to abate a continuous nuisance, and this, whether some provision of the ordinance be valid or invalid. It is sufficient that it here appears, without dispute, that the governing authorities of the city have, after giving due notice to the complainant, as provided by the ordinance, ordered the destruction of the trees, and this upon the theory of a nuisance, which was authorized in all respects by said ordinance. Whether or not the city would be able to collect the costs of the removal of the trees from the complainant is clearly a matter with which we are not here concerned upon
200 ALA.—30

review of the hearing of the application for injunction.

We are fully mindful of the fact that trees of this character are oftentimes very valuable to the property owner, but we are unable to see how the ruling of the court in granting the injunction, upon the record as here presented can be sustained without disregarding the decisions of this court construing section 4528, Code. We therefore think that the order of the chancellor granting the temporary injunction must be reversed. While this, it is true, might work a dissolution of the injunction, yet it by no means denies to the complainant the right of relief upon appropriate pleadings and proof. He may, upon being advised of the conclusion of the court, amend his bill so as to meet the answer, as herein suggested, and make application for a temporary injunction until the question of nuisance vel non or abatement thereof should be determined by the court in due time. If pending amendment the complainant should be of the opinion he is in need of protection of the court, he may apply for a restraining order, as provided in section 4533 (Code 1907), and, indeed, doubtless this court would be authorized, under said section, to so order, if deemed necessary; but, in view of what is herein stated, we do not at all anticipate any necessity for a consideration of that question here, as we entertain no doubt that the municipal authorities will await seasonable hearing upon the amended bill.

It is therefore our opinion that the order of the chancellor should be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur.

THOMAS, J. (dissenting). Appellee obtained a temporary injunction in the chancery court against the city of Birmingham and W. L. Melton, as street commissioner of said city, restraining them from cutting down certain trees in front of appellee's property in said city. From the order granting the temporary injunction this appeal is taken.

The bill of complaint contains the necessary preliminary averments, with the further averments that appellee owned 900 feet of property fronting on the west side of St. Charles street, between Eleventh and Thirteen avenues, in the city of Birmingham; that many years ago he had set along the edge of said sidewalk in front of said property a number of Carolina poplar trees, which had since grown to be large trees, and beautified said property; "that said trees are valuable to said property;" and that the destruction thereof "would materially injure the value of said property, both from the ornamental standpoint and from the

standpoint of the actual money value of said property."

It is further averre'd that this property is unimproved, and that it is being held by the owner, at expense of taxes, an'd of assessments for the building of streets, sidewalks, and sewers, for the purpose of finding a favorable sale or rental of the same; that it is located in one of the best residential 'districts of the city; and that orator considers it necessary in order to find a purchaser of the property at its full value, should he desire to sell, or in order to realize the full rental value thereof should he desire to improve the property and lease it, that "the same have shade trees along the sidewalk thereof, which have been provided at considerable expense, trouble, and inconvenience to orator."

It is further averred that an ordinance was adopted by the board of commissioners of said city, on the 16th day of February, 1916, the effect of which was to make it unlawful "to plant, transplant, set out, or maintain any Carolina poplar tree or trees on any street, alley, avenue, sidewalk, grass plat, or other public place in the city of Birmingham, or in any place where the leaves of the same shall shed on any public street, alley, or avenue, or in any place where the roots thereof will interfere with the drainage in any storm or sanitary sewer of the city of Birmingham."

By the second paragraph of said ordinance it was further ordained that when the roots of any Carolina poplar tree theretofore planted on any public street, sidewalk, avenue, or alley have obstructe'd, or are about to obstruct, the "flow of the drainage in any storm or sanitary sewer of the city of Birmingham, or any branch or lateral thereof, it shall be the duty of the street commissioner to issue a notice to the owner of the abutting prope'rty, or the person in possession of such abutting property, or the agent of the owner of such abutting property, * * * to appear before the city commission at its next regular meeting * * * to show cause why said Carolina poplar tree shall not be cut down and removed at the expense of the said property owner, * * * and upon it being made to appear to the city commission that said roots have obstructed, or are about to obstruct, the flow of the drainage of any storm or sanitary sewer, * * * the said commission shall thereupon order the removal * * * of such Carolina poplar tree," etc.

The bill further avers that, as the owner of such property, complainant has been notified, under the terms of said ordinance, to destroy said trees, and that upon his refusal the city will have the same remove'd at the expense of complainant; that unless prevented by injunction, said city "will proceed to cut down and remove the said trees, to the great injury and damage of orator's property, as hereinabove set out, and will attempt to tax or assess the cost of the same against orator's property," without making any compensation to him therefor, that the said city has never offered to make any compensation for the propose'd damages, and that neither of said defendants has instituted any proceeding, in any court, looking to the ascertainment of such damages, or looking to compensating complainant therefor.

The bill further avers: (1) That the ordinance is unreasonable and beyond the charter powers of said city, in that it selects Carolina poplar trees for destruction, when the roots thereof shall interfere with the sewer, an'd does not provide for the destruction of any other trees, or plants, which may so interfere with sewers; (2) that it is "perfectly feasible in laying sewers to have the same so laid as that the roots of said trees will not obstruct said sewers"; that "the part of said ordinance which provides for the assessment of the cost and expense of cutting down an'd removing said trees at the expense of the property owner is void, in that it is beyond the charter powers of the city of Birmingham;" (3) "that said ordinance * * * is violative of section 23 [Constitution], which provides that private property shall not be taken for or applied to public use, unless just compensation be first made therefor, and * * * of section 235 of the Constitution, which provi'des, in substance, that municipal and other corporations and individuals invested with the privilege of taking property for public use shall make just compensation, to be ascertained as may be provided by law for the property taken, injured or destroye'd by the construction or the enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction."

The answer of and for the city of Birmingham alleges that it is the duty of said municipality to conserve and promote the health, comfort, and convenience of its citizens, and that to that end "it is necessary to maintain an adequate and complete system of sewerage, storm and sanitary"; that by ordinance the construction of a sanitary sewer was authorized to be made along St. Charles street in front of said Graves's property; "that said sewer was so constructed in an improved and workmanlike manner of soil pipe," and its exact location under the street and in relation to complainant's property is averred.

It is further averred in the answer that the vicinity which said sanitary sewer serves is densely populate'd, and that extensive use is made of the sewer for the purposes for which it was constructed; that service sewers lead from the houses of residents along St. Charles street and other places within the vicinity served by the sewer into the sewer mentioned, and that whenever the sewer becomes stopped, its condition such that for any reason the sewage cannot flow freely through the same, such filth is caused to be

and to flow into the residences above the point of the obstruction; and that the presence of the obstructed matter not only prohibits the use of the sewer for the accommodation and convenience of such residents, but also causes a most unsanitary, filthy, and dangerous condition, likely and calculated seriously to impair the health of such residents and to cause them all the annoyance and inconvenience attendant upon such a condition.

It is further averred in the answer that the roots of a Carolina poplar tree are peculiar and different from those of any other tree in the city of Birmingham, maintained along the streets as shade trees, in that the roots of this tree have a peculiar affinity for moisture and a peculiar disposition to work their way into such sewers near by, and, once inside the same, to so expand as not only to impede, but absolutely prohibit, the flow of sewage through such pipes; that the roots of this tree, more than those of other trees generally used as shade trees on the streets and sidewalks of the city of Birmingham, seek either the moisture around the sanitary sewer, or that plane of moisture immediately above the sanitary sewer, through which the roots grow rapidly to and around the pipe itself, and will work their way into the pipe through small holes and, once inside the pipe, grow larger and send out hairlike shoots, which form a network, with the result that the sewer thereby becomes completely closed; that such roots, more than those of any other tree used extensively for shade in the streets of Birmingham, and on numerous occasions, have caused such loss and such condition; that a sewer once obstructed by such roots, after it has been cleaned and cleared thereof, will again become obstructed, within six months, from the same cause; and that the only method by which a sewer so obstructed can be cleared is to cut the roots out or pull them out, and often, to do this, it is necessary to excavate the soil from around the sewer and remove the pipe, which operation entails great loss of time and money and is a great burden upon the taxpaying citizens who must maintain a sufficient number of men, as employés of the city, to do that work, and to be ready to repeat the work at intervals of six months or less.

As we have shown, the answer, and the affidavit filed in support thereof, state fully the nature and character of the trees, the location of said trees, and of the sewer laid under the street, and the manner of the construction of the sewer; that the trees in controversy have a peculiar affinity for moisture, with the tendency to penetrate sewers, at times completely obstructing the flow of sewage through the same, and that this obstruction had occurred on several different occasions, as specifically set out in the answer, putting the city of Birmingham to great trouble and expense in removing the said obstructions, and causing inconvenience,

annoyance, and danger from sickness, to those citizens whose residences were drained by the sewer in question.

The chancellor, relying on the construction of section 235 of the Constitution announced in McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 South. 153, granted the temporary injunction as prayed, restraining appellants from cutting down or removing said trees until compensation therefor should first be made to appellee, under the Constitution.

The position assumed by the city is thus stated by its counsel:

"That it had full authority over the streets and avenues, and that it was not only its right, but its duty, to cause obstructions therein to be removed; that one of the chief duties of a municipality is to look. to the health of its inhabitants, and to that end to provide and maintain an adequate sanitary sewer system; that a sewer system [use] is one of the ordinary and proper uses to which a street may be put, and the presence of such sewer in the street added no additional burden thereto; that the removal of obstructions from the streets and the preservation of the health of the inhabitants of the city were both clearly within the police power of the city of Birmingham, and that in the exercise of that power, within proper limits, there is no liability on the city; that the city may exercise this power in reference to shade trees the same as in reference to any other obstructions on the street, or any other condition which amounts to a nuisance."

Appellee's counsel say:

"It is said: First, that the case of McEachin v. City of Tuscaloosa * * * is improperly decided; and, second, that the McEachin Case does not control this case. The first question, we will not argue. * * * As to the second, * * * it seems to be theory that the McEachin Case does not control: First, on account of the decisions of this court in the Francis Case, 109 Ala. 227 [19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930], and the Hobbs Case, 147 Ala. 393 [41 South. 1003, 7 L. R. A. (N. S.) 87, 11 Ann. Cas. 461], the positions being, that in these cases it was held that a telephone company might cut trees in the erection or maintenance of its line or poles; and, second, by reason of the rule as to necessity set out in the Francis Case, and alluded to in the McEachin Case, which we assume to be tantamount to the argument that the trees in the instant case were about to be destroyed in the valid and reasonable exercise of the police power of the city."

The writer hesitates to enter upon a discussion of the fundamental questions heretofore discussed by this court, in the Francis, Hobbs, and McEachin Cases. However, from the averments of the bill and of the answer thereto, and from the evidence adduced in support thereof, in the light of the argument of counsel, the principle underlying the decision in the McEachin Case is brought forward. We cannot escape its consideration.

The paramount question presented by this record is, Does the city of Birmingham, in attempting to cut down and remove said Carolina poplar trees from the margin of the sidewalk along said property of appellee, for the reasons specifically averred and shown in the pleading and proof, act under and in the exercise of its police power; and, if so, does the fact that the act was in the

proper exercise of that power relieve the city of the payment of resulting damages, or does the whole case fall within the rules of eminent domain? It is provided by section 235 of the Constitution that municipal and other corporations and individuals vested with the privilege of taking property for public use, "shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury or destruction."

That the sidewalks and streets in a municipality belong to the whole people, that it is the duty of the municipality to maintain its public highways in a reasonably safe condition for their appropriate uses, and that the municipality, in the discharge of this duty, has power to remove from such highways any unlawful obstruction whether placed or growing thereon, are well recognized propositions of law. The uses to which a street may be put are more varied than those to which a roadway in nonpopulous municipal or country districts may be subjected. Western R. Co. v. A. G. T. R. Co., 96 Ala. 272, 11 South. 483, 17 L. R. A. 474; Sou. Bell T. & T. Co. v. Francis, supra. The abutting fee owner has the title to the grass and herbage growing in the highway. Dubuque v. Maloney, 9 Iowa, 450, 74 Am. Dec. 358; Stackpole v. Healy, 16 Mass. 33, 8 Am. Dec. 121; Robinson v. Flint Co., 79 Mich. 323, 44 N. W. 779, 19 Am. St. Rep. 174; People v. Foss, 80 Mich. 559, 45 N. W. 480, 8 L. R. A. 472. 20 Am. St. Rep. 532; Holladay v. Marsh, 3 Wend. (N. Y.) 142, 20 Am. Dec. 678; Tonawanda Co. Case, 5 Denio (N. Y.) 255, 49 Am. Dec. 239; Holden v. Shattuck, 34 Vt. 336, 80 Am. Dec. 684. The public authorities may cut it when necessary to the building or maintaining of a suitable way, or where it interferes with the use of the way; yet, the municipal authorities, where the fee is in the property owner, have no right to carry away the grass, wood, etc., when cut by them. Cole v. Drew, 44 Vt. 49, 8 Am. Rep. 363. When the municipality is the owner of the fee, it is entitled to appropriate the grass, wood, or other material products of the soil, growing on the surface of the highway. Carroll v. Elmwood, 88 Neb. 352, 129 N. W. 537, 33 L. R. A. (N. S.) 1053; note, 28 Am. Dec. 305. The owner of the fee has a right in the shrub, grass, tree, or other material product growing on that part of the highway adjoining his property is the holding in Phifer v. Cox, 21 Ohio St. 248, 8 Am. Rep. 58; note 101 Am. St. Rep. 112, 113; Avis v. Vineland, 56 N. J. Law, 474, 28 Atl. 1039, 23 L. R. A. 685; Jackson v. Hathaway, 15 Johns. (N. Y.) 447, 8 Am. Dec. 263; Holladay v. Marsh, 3 Wend. (N. Y.) 142, 20 Am. Dec. 678; Brown's Case, 138 N. C. 533, 51 S. E. 62, 69 L. R. A. 631, 107 Am. St. Rep. 554; Dailey v. State, 51 Ohio St. 348,

37 N. E. 710, 24 L. R. A. 724, 46 Am. St. Rep. 578; Chase's Case, 81 Wis. 313, 51 N. W. 560, 15 L. R. A. 553, 29 Am. St. Rep. 898; Weller's Case, 52 N. J. Law, 470, 19 Atl. 1101, 8 L. R. A. 798; Bigelow v. Whitcomb, 72 N. H. 473, 57 Atl. 680, 65 L. R. A. 676; Graves v. Shattuck, 35 N. H. 257, 69 Am. Dec. 536; Cartwright's Case, 205 Mo. 126, 103 S. W. 982, 12 L. R. A. (N. S.) 1125, 12 Ann. Cas. 249; Miller's Case, 125 Mich. 171, 84 N. W. 49, 51 L. R. A. 955, 84 Am. St. Rep. 569; Stretch v. Cassopolis, 125 Mich. 167, 84 N. W. 51, 51 L. R. A. 345, 84 Am. St. Rep. 567; Brainard v. Clapp, 10 Cush. (Mass.) 6, 57 Am. Dec. 74; Blalock's Case, 154 Ky. 394, 157 S. W. 694, 46 L. R. A. (N. S.) 3; Suffield v. Hathaway, 44 Conn. 521, 26 Am. Rep. 483; but this right or title is subject to the public use for the purposes for which the property was dedicated or condemned, and incidental purposes (So. Bell T. & T. Co. v. Francis, supra; Brainard v. Clapp, supra; Phifer v. Cox, supra; Dailey v. State, supra; note, 1 Ann. Cas. 785), and also subject to the right of the public authorities to remove them if they obstruct the way or interfere with the travel thereon. So. Bell T. & T. Co. v. Francis, supra; Hobbs v. Tel. Co., supra; Castleberry's Case, 74 Ga. 164; Cartwright v. Liberty Co., supra; Brown v. Asheville Elec. Light Co., supra; Rosenthal v. Goldsboro, 149 N. C. 128, 62 S. E. 905, 20 L. R. A. (N. S.) 809, 16 Ann. Cas. 639; Webber v. Salt Lake City, 40 Utah, 221, 120 Pac. 503, 37 L. R. A. (N. S.) 1115. This paramount right of the public over the subordinate right of the owner exists regardless of the ownership of the fee. So. Bell T. & T. Co. v. Francis, supra; Webber v. Salt Lake City, supra; Blain v. Montezuma, 150 Iowa, 141, 129 N. W. 808, 32 L. R. A. (N. S.) 542, Ann. Cas. 1912D, 430; Remington v. Walthall, 82 Kan. 234, 108 Pac. 112, 31 L. R. A. (N. S.) 957; Graves v. Shattuck, supra; Frostburg's Case, 98 Md. 239, 56 Atl. 811, 64 L. R. A. 627, 1 Ann. Cas. 783; Bronson v. Tel. Co., 67 Neb. 111, 93 N. W. 201, 60 L. R. A. 426, 2 Ann. Cas. 639; Weller v. McCormick, 52 N. J. Law, 470, 19 Atl. 1101, 8 L. R. A. 798; Miller v. Detroit Co., 125 Mich. 171, 84 N. W. 49, 51 L. R. A. 955, 84 Am. St. Rep. 569; notes, 39 L. R. A. 670 et seq.; Paola v. Wentz, 79 Kan. 148, 98 Pac. 775, 131 Am. St. Rep. 290; Stretch v. Cassopolis, supra.

To meet the demands of public convenience or necessity, the municipal authorities have the discretion to declare what is necessary to subserve it, and by proper proceedings instituted, to cause the removal of trees and other obstructions on public highways. On the other hand, if such authorities proceed to act in the premises in a purely arbitrary way, to the detriment of the interests of individuals, the courts may intervene, to the end of determining the existence of the public necessity or convenience to be subserved by the proposed action; and such suits are controlled by the rules applicable to the determination of nuisances generally. 1 Lewis on Em.

Do. (2d Ed.) § 132a; 2 Lewis on Em. Do. (2d Ed.) 637; 2 Dillon on Mun. Corp., §§ 614, 648; McKevitt v. Hoboken, 45 N. J. Law, 482; Lawrence v. Nahant, 136 Mass. 477. So much for general authorities.

The ordinance in question must be tested by the doctrine of the court; that is to say, it must be reasonable, and not inconsistent with the general principles of "the law of the land, particularly those having relation to the liberty of the citizen and the right of private property." Yick Wo v. Hopkins, 118 U. S. 371, 6 Sup. Ct. 1072, 30 L. Ed. 220. And this court is not inclined to any "narrow interpretation of the power which may be exercised" as a police power "for the public health and comfort" (Board of Com. et al. v. Orr, 181 Ala. 308, 315, 61 South. 920, 922 [45 L. R. A. (N. S.) 575]); being rather disposed to the view that such ordinances should be construed "benevolently," and subject to the "practical limitations" that affect the class being dealt with (181 Ala. 317, 61 South. 923, 45 L. R. A. [N. S.] 575), as, Whether or not the execution of the provision would be practically impossible, or, Whether or not it is an unreasonable, discriminatory (181 Ala. 317, 61 South. 923, 45 L. R. A. [N. S.] 575), and essentially arbitrary exercise of the power (Denson v. Ala. Fuel & Iron Co., 198 Ala. 383, 73 South. 525).

The last two Constitutions of this state, those of 1875 and 1901, in section 7, art. 14, and section 235, respectively, provided that property shall not be taken, injured, or destroyed, for public use, by municipal or other corporations or individuals invested with the power of eminent domain, in the "construction or enlargement of its works, highways, or improvements, without compensation [which] shall be paid before such taking, injury or destruction."

In Montgomery v. Townsend, 80 Ala. 489, 2 South. 155, 60 Am. Rep. 112, s. c., 84 Ala. 478, 4 South. 780, involving the changing of the grade of a sidewalk that had become dangerous to correspond with the grade of the street, it was declared that a municipality is liable, under this constitutional provision, only "for extraordinary changes," such as could not have been naturally and reasonably anticipated, or for those made merely because corporate authorities may decide that public convenience would be enhanced, or the general appearance of the street improved, and damages for which could not have been legally awarded at the time of acquiring the property for street purposes. The dividing line between liability and nonliability is declared to be:

"Between what is necessary to safe and convenient use, on the one hand, and what is in excess thereof, and not essential thereto, or mere ornamentation, on the other."

The doctrine enunciated in this case is expressly limited by the court to cases in which there is no ownership of the fee in land used for street purposes by the city (80 Ala. 496, 2 South. 155, 60 Am. Rep. 112).

In City Council of Montgomery v. Maddox, 89 Ala. 181, 7 South. 433, the municipality was held liable for cutting down the grade of a sidewalk to the level of a street in the city of Montgomery, thus giving section 7, art. 14, of the Constitution of 1875 a more liberal construction than did the Townsend Case. The decision in the Maddox Case was by a divided court; two of the judges concurring to the effect that the liability should extend to all damages resulting from the change of grade, and two being of the opinion that the damages should be limited (as in Townsend's Case) to "the difference between the market value of the lot before and after the lowering of the sidewalk, * * * the diminution in value produced thereby."

In Town of Avondale v. McFarland, 101 Ala. 381, 13 South. 504, the municipality was held liable under the Constitution for injuries resulting to abutting property from the failure to provide an escape for the flow of water, in grading a street which passed over low or wet ground, in order to make the way safe and convenient as a public highway; and the decision in the Townsend Case, supra, in so far as it held that there is no liability when the grading is done to improve the street so as to make it safe and convenient for public travel, has been overruled.

A pertinent fact to be noted in the Townsend, Maddox, and Avondale Cases is that in each the property right dealt with was where the grade of the sidewalk was reduced, or filled in, in such wise as to affect the owner's right of egress and ingress, or where there was such interference with the natural flow of water as that the right user of the whole property by its owner was thereby affected. The rights of the respective adjacent property owners, in such cases, are subject to the doctrine of eminent domain. Const. §§ 23, 235. Enterprise Lumber Co. v. Porter, 155 Ala. 426, 46 South. 773; Town of Eutaw v. Botnick, 150 Ala. 429, 43 South. 739; B. R., L. & P. Co. v. Oden, 146 Ala. 495, 41 South. 129; New Decatur v. Scharfenberg, 147 Ala. 368, 41 South. 1025, 119 Am. St. Rep. 81; Arndt v. City of Cullman, 132 Ala. 540, 31 South. 478, 90 Am. St. Rep. 922; M. & M. R. Co. v. Ala., etc., R. Co., 116 Ala. 51, 23 South. 57; City of Huntsville v. Goodenrath, 13 Ala. App. 579, 68 South. 676; Dallas Co. v. Dillard, 156 Ala. 354, 47 South. 135, 18 L. R. A. (N. S.) 884.

In McEachin v. City of Tuscaloosa, supra, by a divided court, the provisions of section 235 of the Constitution were held to give a right of action to the owner, for damages resulting from the taking of private property, under the power of eminent domain, for public use in the construction or enlargement of the city's works, highways, or improvements, the specific injury in that case being the impaired value and enjoyment of plaintiff's property resulting from the removal of

shade trees situated on the edge of the sidewalk adjacent thereto; and this, irrespective of whether the fee of the property on which the trees stand is in the plaintiff or in the taker, and although his right of ingress or egress is not affected thereby.

Thus was the rule extended beyond the purview of our other cases. But we do not find that the McEachin Case has been since reaffirmed on similar facts in this or any other state.

In Webber v. Salt Lake City, 40 Utah, 221, 120 Pac. 503, 507, 37 L. R. A. (N. S.) 1115, the suit was against the city for damages to plaintiff's property abutting upon a public street, alleged to have been sustained by reason of changing the grade of the street in front of said property and removing from it a row of shade trees which the plaintiff had planted and cared for, which trees were averred to be both ornamental and useful. In the opinion Chief Justice Frick reviewed the authorities, and quoted from Judge Dillon the familiar rule that:

"The title or interest of the abutting owner in the shade trees must yield to the power of the city to grade the street, or to build sidewalks, or otherwise improve it. For any injury resulting therefrom, the abutting owner has no redress." 2 Dillon, Mun. Corp. (5th Ed.) § 721.

Judge Frick declared that the weight of American authority is to the effect that a city, proceeding lawfully and properly in changing the established grades of a street owned by it in fee, is not liable in damages for the removal of shade and ornamental trees planted by the abutting owner and growing in the street; the removal being unavoidable in changing the street. Morris v. Salt Lake City, 35 Utah, 474, 101 Pac. 373. The Chief Justice adverted to the fact that three cases are referred to, namely, Seaman v. Borough of Washington, 172 Pa. 467, 33 Atl. 759, McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 South. 153, and Cook v. Ansonia, 66 Conn. 429, 34 Atl. 183, in which damages had been allowed in accordance with counsel's contention, and discussed these cases at some length. We quote:

"We have carefully examined those cases and the special constitutional and statutory provisions on which they are based. * * * Section 235 of the Constitution of Alabama, * * * on which the decision of McEachin v. City of Tuscaloosa is based, is practically a transcript of the provisions we * * * quoted from the Constitution of Pennsylvania. The McEachin Case was decided in December, 1909, and is concededly based upon the constitutional provision aforesaid. Notwithstanding said provision, however, two of the Justices of the Supreme Court of Alabama filed a strong dissenting opinion, in which the law is stated as, in the absence of special statutory provisions, we contend it to be. This is recognized by the majority of the court, as appears from 164 Ala. 266, 51 South. 154, where it is said: 'We would make no war upon the opinion of Justice Sayre, as concurred in by the Chief Justice, if section 235 of the Constitution did not exist.' The constitutional provision of Alabama is also found in the Constitution of 1875 of that state, and was under consideration in City of Montgomery v. Maddox, 89 Ala. 181, 7 South. 433, where, at page 186, Mr.

Justice Somerville, in referring to the particular language of the Alabama Constitution, says: 'I do not discover precisely this same language in the Constitution of any other state, except those of Alabama and Pennsylvania.' Neither have we been able to do so. While in the Pennsylvania case nothing is said with regard to the constitutional provision, yet it is clear that the decision is based upon that provision. This conclusion is almost unavoidable, for the reason that the whole matter is disposed of in one sentence, and not a single case is cited in support of the rule. This disposes of the Pennsylvania and Alabama cases. In disposing of them, it is not necessary for us to determine whether the constitutional provisions referred to in those states were properly construed or not. It is sufficient for us to know that those courts have given them a broad and liberal construction. This is apparent from the language used in the Alabama case to which we have referred. The case of Cook v. Ansonia, supra, is also based upon a special statute in force in Connecticut. * * * In view of the special constitutional and statutory provisions prevailing in the states of Alabama, Pennsylvania, and Connecticut, which, by those courts, at least, are held to be broader than our own, we are of the opinion that those cases should not be permitted to control the question in this state."

The provision of the Constitution construed in the Webber Case is:

"Private property shall not be taken or damaged for public use without just compensation." Const. Utah, art. 1, § 22.

This, in effect, is the provision found in sections 23 and 235 of the Constitution of Alabama.

It will be further noted from the discussion of the Seaman and Cook Cases, supra, that in each, as in the McEachin Case, the shade trees were treated as held by the adjacent property owner under an absolute property right. In the Seaman Case "the shade trees in front of the premises of J. W. Seaman, and porch in front of the premises," were considered alike in estimating the damage—the difference in the market value of the whole property before the improvement and after it. In the Cook Case, supra, the value of the trees, the cost of relaying the sidewalk, and the cost of regrading the plaintiff's lot, were considered as like elements of damage. This was a fundamental error, as we have pointed out.

The interest of such abutting property owners in the shade trees growing on the public highway is only the subservient right to beautify and improve, and so enhance the value of, their property.

When a road or street is dedicated or condemned to public use, there spring into existence two sets of rights, which are concurrent and coequal: (1) The general easement of passageway in favor of all travelers along the highway; and (2) the special easements, in favor of abutting owners, of access, egress, light, air, and view. First Nat. Bank v. Tyson, 133 Ala. 459, 476, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46, citing Barnett v. Johnson, 15 N. J. Eq. 481. These two sets of rights are inherent in the nature of highways, are entirely consistent with each

other, and spring naturally and necessarily from the very purposes that underlie the creation of a highway. In this state the private easements of abutting owners with respect to access and egress are fixed by surface conditions existing at the time of dedication, so far as they may be injured by changes afterwards made or authorized by municipal authority. Montgomery v. Maddox, supra. But the right to grow and maintain trees or other obstructions, along the highway, for private use or convenience or pleasure, is not, like the major, easements above mentioned, a coequal property right appurtenant to the owner's premises, but is strictly subordinate to the public use, whether of passageway by travelers or of the various public utilities to the use of which highways may be lawfully subjected. So. Bell Tel. Co. v. Francis, 109 Ala. 224, 19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930; Hobbs v. Long Distance Tel. & Tel. Co., 147 Ala. 393, 41 South. 1003, 7 L. R. A. (N. S.) 87, 11 Ann. Cas. 461. The Constitution requires compensation for injury to a property right, but clearly not for the deprivation of that to which the property owner has no right in law or equity. The whole discussion in the Francis Case supports this view, irrespective of how the fee to the street is held in a populous town or city. This case has been cited with approval in Miller v. Detroit Co., 125 Mich. 171, 84 N. W. 49, 51 L. R. A. 955, 84 Am. St. Rep. 569; Lynch v. Northview, 73 W. Va. 609, 81 S. E. 833, 52 L. R. A. (N. S.) 1038; C. T. & T. Co. v. Avritt, 120 Ky. 34, 85 S. W. 204, 8 Ann. Cas. 955; G. & L. T. Co. v. Mulholland (Ky.) 76 S. W. 148; 13 R. C. L. p. 132; 10 R. C. L. p. 171. The primary ground on which the decision in the Hobbs Case was rested was that above announced. This case was approved in New Decatur v. Am. T., etc., Co., 176 Ala. 557, 58 South. 613, Ann. Cas. 1915A, 875; Plattsmouth Case, 80 Neb. 460, 114 N. W. 588, 14 L. R. A. (N. S.) 654, 127 Am. St. Rep. 779; Horton v. L. D., etc., Co., 148 Ala. 680, 41 South. 1006; Richardson v. Tel. Co., 148 Ala. 680, 41 South. 1006; Lowther v. Bridgeman, 57 W. Va. 306, 50 S. E. 410; Roaring Springs Case (Tex. Civ. App.) 164 S. W. 50.

We are not unmindful of the fact that a strict construction is given those sections of the Constitution designed for the preservation and security of the elementary right of private property (State v. Birmingham So. Ry. Co., 182 Ala. 475, 62 South. 77, Ann. Cas. 1915D, 436), and that to ordinances having for their object the preservation of the public health and comfort, no narrowed interpretation will be given. Having due regard for the cardinal rules of constitutional and statutory construction applicable, we are of opinion that under the facts in the instant case disclosed by the answer of the city any damage resulting from the removal of said trees as obstructing an important and material part of the sewerage system of the city does not come within the purview of either section 23 or section 235 of the Constitution, even as defined or distinguished in Dallas Co. v. Dillard, supra, and that injury resulting to the trees of plaintiff as an abutting owner, referable to the proper exercise of the city's vested authority in such matter, is damnum absque injuria.

It should result from the foregoing that the rule declared in McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 South. 153, is not in accord with the views herein expressed, and that case should be overruled.

The public health has been declared to be an essential condition of right living, and its maintenance is one of the primary purposes of municipal organization. The control of sanitation, for this reason, is deemed to be a necessary and an inherent power of municipal government. 2 Cooley, Torts, 1307 (740), 1309 (741), and authorities collected; Gundling v. Chicago, 176 Ill. 340, 52 N. E. 44, 48 L. R. A. 230; Monroe v. Lawrence, 44 Kan. 607, 24 Pac. 1113, 10 L. R. A. 520; Kibele v. Philadelphia, 105 Pa. 41; St. Paul v. Laidler, 2 Minn. 190 (Gil. 159), 72 Am. Dec. 89; Langley v. Augusta, 118 Ga. 590, 45 S. E. 486, 98 Am. St. Rep. 133; Willett v. St. Albans, 69 Vt. 330, 38 Atl. 72; Greensboro v. Ehrenreich, 80 Ala. 579, 2 South. 725, 60 Am. Rep. 130; Montgomery v. West, 149 Ala. 311, 315, 42 South. 1000, 9 L. R. A. (N. S.) 659, 123 Am. St. Rep. 33, 13 Ann. Cas. 651; Town of Cuba v. Oil Co., 150 Ala. 259, 265, 43 South. 706, 10 L. R. A. (N. S.) 310; Hundley v. Harrison, 123 Ala. 292, 26 South. 294; Kinney v. Koopman, 116 Ala. 310, 318, 22 South. 593, 37 L. R. A. 497, 67 Am. St. Rep. 119; English v. Motor Car Co., 95 Ala. 259, 10 South. 134; Rouse v. Martin, 75 Ala. 510, 51 Am. Rep. 463.

The power of the municipality of Birmingham to enact the ordinance in question was given by several sections of the Code; section 1251, authorizing the city to provide for the safety, health, etc., of the inhabitants, section 1276, authorizing it to establish quarantine, section 1278, to provide against nuisances, and sections 1290, 1292, and 1293, to maintain the public health and establish and maintain a sufficient sewerage system. In addition to these general powers thus vested, the Legislature has conferred upon cities of the class of Birmingham all the police power of the Legislature. Gen. Acts 1915, p. 296, § 6; Birch v. Ward et al., 75 South. 566.[1] The ordinance in question was passed in the exercise of the city's power to preserve the comfort and health of its citizens.

The only question remaining is whether the ordinance is essentially arbitrary. The general rule is that one who assails the classification of a statute or an ordinance must carry the burden of showing that it does not rest on any reasonable basis. Orient Ins.

[1] Ante, p. 118.

Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; Carroll v. Greenwich, 199 U. S. 401, 26 Sup. Ct. 66, 50 L. Ed. 246; Bachtel v. Wilson, 204 U. S. 36, 27 Sup. Ct. 243, 51 L. Ed. 357; Lindsley v. Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160. Laws and ordinances applicable only to members and objects of a class, where the classification rests upon some disability or attribute marking such class as proper objects or subjects for the operation of such special legislation, may be enacted. Denson v. Ala. Fuel & Iron Co., 73 South. 525;[2] Board of Com. v. Orr, supra; Smith v. Woolf, 160 Ala. 644, 49 South. 395; K. C., M. & B. R. R. Co. v. Flippo, 138 Ala. 487, 35 South. 457; Yick Wo v. Hopkins, supra.

The ordinance in question was an attempt to declare what was already the general power of the city, the power to free its public highways from unnecessary and unreasonable obstructions placed or maintained thereon by an abutting property owner. It sought to afford a summary proceeding, after notice to the owner or owners such as the one in question and a hearing, to remedy or remove an unnecessary and unreasonable obstruction to a substantial part of its drainage system. The first section of the ordinance—a preventive provision—is not open to the objection that the classification made was unreasonable and essentially arbitrary. Sections 2 and 3 thereof are not free from objection. The power to remove shade trees growing on the margins of public highways of a city, where they are "about to obstruct the flow of the drainage," does not exist, until the necessity for their removal is reasonably apparent. So the provision of the ordinance, for the assessment and collection of the expense involved in such removal, cannot be upheld.

The exercise by its constituted authorities of a proper discretion in the protecting of the city's highways, and the freeing of the same from unnecessary obstruction, the courts will not ordinarily supersede, nor enjoin. It is only the arbitrary and unreasonable exercise of this power that the courts will restrain or supervise. Where irreparable injury will result to an abutting property owner from the cutting of trees supposed to obstruct the public use of the highway, a temporary injunction may properly issue, preventing the cutting until the question of reasonable necessity therefor can be inquired into by the proper parties in interest, and declared by the court after a hearing. To this extent only may such an injunction be continued in force.

The injunction in the case at bar should be continued in force, until the merits of the case can be heard and determined.

SAYRE and SOMERVILLE, JJ., concur with the writer.

2 198 Ala. 383.