292 So.2d 121

The CITY OF HARTSELLE, a municipal corporation

v.

Troy KILPATRICK.

Civ. 287.

Court of Civil Appeals of Alabama.

March 20, 1974.

Dieter J. Schrader, Huntsville, for appellee.

Caddell, Shanks, Harris, Moores & Murphree, Decatur, for appellant.

Drayton N. Hamilton, Montgomery, for Alabama League of Municipalities, amicus curiae.

HOLMES, Judge.

From the Circuit Court of Morgan County, defendant-appellant City of Hartselle appeals from a general verdict and judgment rendered by the trial judge in the amount of $1,500 in favor of plaintiff-appellee Troy Kilpatrick. The case went to trial on three counts. Count A claimed damages for trespass resulting from the cutting of a tree; Count B claimed damages for cutting a tree, plus it alleged an intentional cutting; and Count C claimed damages for cutting a tree and alleged that such cutting was done intentionally, negligently, improperly, and arbitrarily and that plaintiff was not paid any compensation therefor. The case was tried before the distinguished trial judge sitting without a jury.

Appellant urges four assignments of error as follows: That the evidence was insufficient to sustain the judgment; that the judgment is contrary to the great preponderance of the evidence; that the lower court erred in rendering a judgment against the defendant for cutting, in the exercise of its police power, a tree located on a street right-of-way; and that the judgment is contrary to law in that it awards damages against a municipality for cutting, under its police power, a tree located on a street right-of-way.

Appellant's dispositive assignment of error is that the judgment of the lower court is contrary to the great preponderance of the evidence.

This court, in considering such an assignment of error, is bound to apply the well-known principle of law that where the trial court has heard testimony *ore tenus*, the decree will not be disturbed on appeal unless contrary to the great weight or preponderance of the evidence. Dixie Auto Ins. Co. v. Lee, 288 Ala. 185, 258 So.2d 892; Tenison v. Forehand, 281 Ala. 379, 202 So.2d 740. See also 2A Ala.Dig., Appeal and Error, ⊜1012, 1012.1(1), (3).

Review of the evidence in the case reveals the following:

The plaintiff, a resident of Courtland, Alabama, owned property located in Hartselle, Alabama, which consisted of a corner lot with a house located on the lot. The lot is at the intersection of Main and Milner Streets. The City of Hartselle cut down a large oak tree which was located between the curb of the paved portion of the street and the sidewalk. The tree was in the corner where Milner Street intersects Main Street. There was also a traffic stop sign at said intersection for Milner Street traffic.

In regards to the street right-of-way, the plaintiff claims his property begins from the curb and includes the sidewalk. The city claims the right-of-way to the sidewalk. There was no deed or grant recorded giving the city such, but there was testimony that the street right-of-way was 60 feet and had been considered and accepted as such for many years.

Williams, a registered land surveyor for 15 years, testified he has made numerous surveys in and around the City of Hartselle. He testified that in order to determine the width of Main Street, iron pin markers which are up and down Main Street are used to establish or determine where the right-of-way is located. They are accepted in his profession as evidence of the right-of-way line of Main Street. He also testified that he used Green's Map and Rountree's Map (neither are recorded in the probate office) in making land surveys. He has also used a map prepared by a Mr. Pattillo which is acceptable in the profession. Williams stated that any of

these maps are acceptable as accurate portrayals of the subdivision in which the property is located, the streets, and the various other items shown on it. Williams also testified that the right-of-way of Main Street at the location in question was 60 feet. He testified that setting aside the 60 feet for the right-of-way would still leave the called-for dimensions of the plaintiff's property as shown on Rountree's Map. He also stated that the 60 foot right-of-way was accepted by him as a surveyor and he has checked it out in regards to accuracy. Importantly, Williams testified that Rountree's, Green's, and Pattillo's maps are identical with respect to dimensions of the streets.

There was further testimony from Lott, a registered land surveyor, showing the street right-of-way to be 60 feet. He testified he had made numerous surveys and on these surveys he has shown the right-of-way at the point in question to be 60 feet. He has used Green's Map (which shows Rountree's Map upon it). He noted that Green's Map is dated 1908–1909. He stated that he has also used Pattillo's Map, which was based upon Green's Map. He has found the maps to be accurate and acceptable for surveyor's use. Lott stated that all of the old markers along Main Street measure a 60 foot right-of-way. Lott stated he has lived in Hartselle since 1946, and Main Street has been the same width the entire time.

Importantly, both Lott and Williams stated that plaintiff's property description begins at the right-of-way line of 60 feet, not at the pavement of the street, since the deed makes reference to Lot 150 of Rountrec's Plat. They stated that if property measurements were taken from the pavement, then somewhere down the line houses wouldn't be sitting where they are now and would be straddling or even over their existing property line. Additionally, Lott and Williams stated that since plaintiff's deed refers to the Rountree plan, one must go to the measurements shown by that plan, set aside a 60 foot right-of-way, and then commence with the property description.

The Supreme Court of Alabama, in Ford v. Ward, 272 Ala. 235, 130 So.2d 380, stated that a map referred to in a deed as indicating intent of what is to be conveyed may be referred to to aid in such identification. Furthermore, lines and figures on plats become part of the description by reference as if courses and directions shown thereby were set out in the deed.

Upon applying the 60 foot right-of-way, it is clear that this includes the sidewalk and the strip of land between the sidewalk and curb.

Testimony revealed that the city had exercised dominion over the strip of land between the sidewalk and the paved street. There were sewer and water lines in place between the curb and sidewalk. Testimony from witnesses show these lines have been in place a significant time. Williams, an engineer, testified they had been there as long as he has lived in Hartselle (12 years); Horton a member of the city council, testified the lines plus overhead power lines owned by the city have been there as long as he could remember (he has lived in Hartselle 14 years); Lott, city manager and former surveyor, testified that the water and sewer lines had been there since 1940, and that there are power poles between the sidewalk and back of the curb; Long, Mayor of Hartselle, testified as to water and sewer lines located at the intersection of Main and Milner Streets, as did Buckelew. There was also testimony from Lott, Long, Buckelew (a council member), and Johnson (a former city councilman), that the city had performed maintenance on the sidewalk. Lott and Buckelew stated no assessment was made for the maintenance work.

From the foregoing evidence, several important factors may be determined. First, the three main plats of the city show the right-of-way at the point in question to be 60 feet. Notably, Green's

Plat which also shows Rountree's plan upon it is dated 1908–1909. This, plus evidence of the city's dominion of the sidewalk and area between the sidewalk and curb by water, sewer, and power lines, shows control by the city over the portion in issue.

Therefore, there is a street since it has been used generally by the public for 20 years or more and there is nothing in the evidence to contradict the arising presumption of dedication. See Whiteside v. Brown, 266 Ala. 27, 93 So.2d 747; Still v. Lovelady, 218 Ala. 19, 117 So. 481; Trammell v. Bradford, 198 Ala. 513, 73 So. 894. See also 10 McQuillin, Municipal Corporations, § 30.21, and cases cited therein.

█ Since it was established by the overwhelming preponderance of the evidence that the city had a street and right-of-way, we must determine what is included in the term. A street has been held to include a sidewalk in its broad and general sense. That is, a sidewalk is a part of, and included within the term "street." City of Mobile v. Harker, 204 Ala. 26, 85 So. 425; City Council of Montgomery v. Foster, 133 Ala. 587, 32 So. 610. See 10 McQuillin, Municipal Corporations, § 30.11.

From the above, it is clear that the tree, which stood between the sidewalk and the curb of the paved portion of the street was standing in an area which was within the 60 foot right-of-way shown on the plats, or at least an area which had been under the control and dominion of the city.

There was testimony that the city cut the tree in question because it obscured vision at the intersection and was a hazard. As to whether the tree was a hazard, plaintiff's witness Bagwell testified the tree would obscure part of the vision of one driving down Milner Street looking to the right when reaching the intersection of Main Street. Plaintiff's witness Johnson testified the intersection constituted a traffic hazard before the tree was cut. Buckelew testified that the tree in question created a blind spot and that it was necessary

to pull out into Main Street before one's visibility was good. He also stated that the city council had received several complaints about the intersection being a blind corner; that many school children crossed the street there and it was dangerous to them. Williams said the tree blocked one's vision to the right when one stopped at the intersection; that one would just have to pull on out into Main Street before one could see; that it was difficult to even observe traffic coming from the right unless one pulled out. He said the situation before the tree was cut was a traffic hazard. Horton testified as to receiving complaints about the tree obstructing the intersection and that the tree was cut solely to eliminate what the council considered to be a traffic hazard. Lott testified that he, as city manager, received complaints about the condition existing at the intersection before the tree was cut down; the complaints were of lack of visibility. He stated that before the tree was cut down, the tree would block any vision there. Long, Mayor of Hartselle, received complaints about the intersection and personally looked at it. He said the situation was dangerous; that one could not see to get out without pulling out into the street; that the intersection was dangerous.

The only testimony that the tree was not a hazard was plaintiff's witness, Mrs. Strider, who stated that she did not consider it a hazard, and that one could see to the right if one stopped just in front of the stop sign. However, she said if you stop "level" with the stop sign you couldn't see. Also, the plaintiff Kilpatrick testified that he didn't think the tree would block vision of traffic coming onto Main Street.

█ In accord with the above testimony, two councilmen, the city manager, and mayor testified that the tree was cut solely to eliminate a traffic hazard. The official action to cut the tree was taken after a vote by the council at a regular meeting. We cannot say that such action was not proper.

Ala.Code, Tit. 37, § 402 (1940), imposes a legal duty on the city to keep the streets and sidewalks in a reasonably safe condition for use of the public. City of Gadsden v. Ryan, 284 Ala. 484, 226 So.2d 87; City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23.

■ The right of a municipality to take such action has been upheld in similar circumstances as an exercise of the police power, whereby the city acts to protect the health, comfort, and general welfare of the inhabitants. See City of Mobile v. McClure, 221 Ala. 51, 127 So. 832; City of Birmingham v. Graves, 200 Ala. 463, 76 So. 395. Such action cannot be arbitrary nor manifestly abuse the police power, nor can it be rendered in an improper manner. Subject to the requirement of acting in good faith and not abusing its power, the city has the power of control over its streets, spaces occupied by trees, and wires thereon. This power is paramount and the city has the right in proper cases, in the interest of public safety, convenience, or health, to cut trees down. A municipality may remove trees, when necessary, without compensation in connection with making improvements on the street or where they are an obstruction to travel. See 10 McQuillin, Municipal Corporations, § 30.67; 56 Am.Jur.2d, Municipal Corporations, § 437.

There appear to be two fundamental questions involved in the instant case which are adequately presented by Mr. Justice Foster in City of Mobile v. McClure, supra, at 221 Ala. 52, 127 So. 833, as follows:

"The fundamental questions of law which are involved have been settled in this state, and need no further discussion. Briefly stated, they are: (1) That if the tree was cut by the city while engaged in the construction or enlargement of the works, highways, or improvements of the city, and the property of the lot owner is thereby injured or destroyed, the city is liable in damages to the extent of an amount which would award just compensation therefor. Const. § 235; McEachin v. Tuscaloosa, 164 Ala. 263, 51 So. 153; Birmingham v. Graves, 200 Ala. 463, 76 So. 395. (2) That if the tree is cut in the exercise of the police power of the city, in caring for the health, comfort, and general welfare of the inhabitants thereof, and was not an arbitrary, corrupt, or a manifest abuse of the right of such police power, and not rendered in an improper or negligent manner, the city is not liable in damages for doing so. Birmingham v. Graves, supra; Southern Bell v. Francis, 109 Ala. 224, 19 So. 1, 31 L.R.A. 193, 55 Am.St.Rep. 930; 4 McQuillin, Municipal Corporations (2d Ed.) § 1431; 38 Cyc. 528."

■ Therefore, it is clear that a city may use its power of eminent domain to remove a tree, but if so, must compensate for damages in accord with § 235 of the Alabama Constitution. If, however, the city uses its police power in a proper manner as stated above, the city is not liable for damages, and, in fact, it would be the duty of the city to remove the tree. In this instance, the provisions of § 235 of the Alabama Constitution would have no application. Birmingham v. Graves, supra.

It appears that the learned trial court may have been considering eminent domain where compensation is awarded rather than action by a municipality under its police power where no compensation is due, as in the instant case where the tree was on the right-of-way of the municipality. However, as we view the testimony, there is no competent evidence that the city was acting pursuant to its power of eminent domain. Accordingly, the award of $1,500 to plaintiff-appellee was error. Furthermore, quoting from 10 McQuillin, Municipal Corporations, § 30.67:

"Except where it is otherwise provided by statute or other laws, the abutting owner cannot obtain compensation from the municipality where his trees are in-

jured or cut down by an officer or city contractors in the proper performance of their duty. So the abutting owner need not be given notice of the intention of the municipality to remove trees."

 In the instant case, since the city was properly acting under its police powers, and the tree was within the street right-of-way, there was no requirement that the plaintiff be given notice, and no violation of due process. See 56 Am.Jur. 2d, Municipal Corporations, § 437, and cases cited therein.

It seems clear, in view of the evidence, that the propriety of the cutting of the tree by the City of Hartselle as an exercise of its police power and of not installing a traffic signal was peculiarly known to the city authorities as they testified. How can we question, under the facts of this case, this decision? Was the tree a menace to safety, or convenient use of the street, or a traffic hazard? We hold the weight of the evidence clearly shows that it was.

We have applied the necessary presumptions stated at the outset in regards to the force of a decree rendered after a hearing *ore tenus*. However, we hold that the finding of the lower court on the evidence presented as to the right-of-way of the street and as to the tree being a hazard and the city acting properly (i. e., not arbitrary, negligent, etc.) under its police power is clearly against the great weight and preponderance of the evidence and cannot stand.

We have reached this determination by weighing the evidence presented and being guided by the conviction produced upon the judicial mind, not by counting the witnesses, realizing that the witnesses' testimony must be weighed, not numbered. Williams v. Burt, 224 Ala. 442, 140 So. 751; Stacey v. Stacey, 250 Ala. 187, 33 So.2d 898. See also, 9 Ala.Dig. Evidence, ☞598(1).

Accordingly, the great weight of the evidence shows that the tree was within the right-of-way of the street over which the City of Hartselle exercised control; that the tree was a traffic hazard; and the city, in accord with a proper vote of its council, cut down the tree under its police powers. Therefore, the plaintiff-appellee is not entitled to compensation.

Reversed and rendered.

WRIGHT, P. J., and BRADLEY, J., concur.